UNITED STATES DISTRICT COURT
F0R THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN F. HUGHES,<br><br>    Plaintiff,<br><br>v.<br><br>BAYSTATE FINANCIAL SERVICES, LLC,<br>IAFF FINANCIAL CORPORATION,<br>KURT M. BECKER, DAVID C. PORTER,<br><br>    Defendants | Civil Action No. 1:23-cv-10361-AK |

**MEMORANDUM IN SUPPORT OF DEFENDANT KURT M. BECKER'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Plaintiff, a resident of the state of Maine, has filed a Complaint in this district that includes one claim against defendant Kurt Becker ("Mr. Becker"), a resident of the state of Missouri. That claim, which appears in the "Third Cause of Action," is for tortious interference with advantageous business relations – a Massachusetts state-law tort that purportedly arises out of Plaintiff's brief employment with co-defendant IAFF Financial Corporation, a Delaware corporation with a principal place of business in Washington, D.C.

It is undisputed that (1) Mr. Becker does not live, work, own property, or pay taxes in Massachusetts, and (2) none of the alleged conduct related to this claim occurred in Massachusetts. To be clear, Plaintiff's claim against Mr. Becker is completely baseless as a matter of fact.[1] But this Court need not and should not reach the merits of this claim, because Plaintiff's pleadings on their face establish that the Court does not have personal jurisdiction

---

[1] As the evidence will show, neither Mr. Becker nor the other defendants in this case engaged in any wrongful conduct whatsoever.

1

over Mr. Becker as a matter of both statutory and constitutional law. Rather and as more fully set forth below, Plaintiff's Third Cause of Action should be dismissed under Fed. R. Civ. P. 12(b)(2) because the Court lacks personal jurisdiction over Mr. Becker.

## BACKGROUND FACTS

Plaintiff filed the instant lawsuit on February 17, 2023 against four defendants: two corporations, Baystate Financial Services, LLC ("Baystate") and IAFF Financial Corporation ("IAFF-FC"), and two individuals, David C. Porter ("Mr. Porter") and Mr. Becker. *See* Compl. (ECF Docket No. 1) at ¶¶ 3-6.[2] Defendant IAFF-FC is Plaintiff's former employer and Mr. Becker was Plaintiff's supervisor at IAFF-FC. *See* Declaration of Kurt M. Becker ("Becker Decl.") at ¶ 6, attached as **Exhibit A**.

The only claim against Mr. Becker is set forth in Plaintiff's Third Cause of Action for "tortious interference with advantageous employment relations."[3] Plaintiff clams that he had an "advantageous employment relationship with the IAFF-FC," and that Mr. Becker was aware of and "purposefully and maliciously interfered with" that relationship and "wrongfully induced the IAFF-FC to terminate Plaintiff's employment for his [Mr. Becker's] own financial gain." Compl. at ¶¶ 64-67.[4]

---

[2] Mr. Porter works for defendant Baystate, and Mr. Becker works for defendant IAFF-FC. *Id.*

[3] Four of the five causes of action raised in the Complaint are state law claims. Mr. Becker is the only defendant named in the third cause of action.

[4] Although not relevant to this Motion, the evidence will show that Plaintiff misrepresented his credentials and did not possess the training or experience to perform the job for which he was hired. Plaintiff's poor job performance caused the IAFF-FC to place him on a performance improvement plan within less than a year, and to terminate him seven months after that. *See* Becker Decl. at ¶ 7.

Plaintiff "is, and was at all relevant times, a citizen of the State of Maine." *Id*. ¶ 2.  Mr. Becker "is, and was at all relevant times, a citizen of the State of Missouri" who works at IAFF-FC's principal place of business, located at "1750 New York Avenue NW, Washington D.C." *Id.* at ¶¶ 4-5.  Every decision and/or action relating to Plaintiff's employment was made or occurred in Washington D.C. and received by Plaintiff in Washington D.C.  *See* Compl. at ¶¶ 38, 47; Becker Decl. at ¶ 9.

Plaintiff admits that his conduct "did not occur primarily and substantially in Massachusetts."  *See* Plaintiff's Answer to Counterclaims (ECF Docket No. 8) at ¶ 45.  He performed his job duties from his home in Alfred, Maine, with the exception of three trips to Washington, D.C. to attend meetings connected with his employment.  *See* Becker Decl. at ¶ 7.  On the first trip, in August 2021, Plaintiff traveled to Washington, D.C. and made a presentation to the IAFF-FC Board of Directors, after which he received an offer of employment with IAFF-FC.  *Id.*  Plaintiff traveled to Washington, D.C. for a second time in May 2022 to discuss the many struggles he was having performing his job duties and was placed on a performance improvement plan.  *Id.*  Plaintiff traveled to Washington, D.C. again in January 2023, at which time he was offered a severance package, which he chose to reject and was subsequently terminated.  *Id.*  Mr. Becker, in turn, performed his job duties primarily from his office in Washington, D.C.  *Id.* at ¶¶ 4, 9.

Plaintiff did not travel to Massachusetts at any point in time during his employment with IAFF-FC, and Mr. Becker traveled to Massachusetts only once to attend a conference that was unrelated to Plaintiff's employment.  *Id.* at ¶¶ 7-8.

**ARGUMENT**

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears "the burden of demonstrating that jurisdiction is 1) statutorily authorized and 2) consistent with the Due Process Clause of the United States Constitution." *Carp v. XL Ins. et al*, 754 F. Supp. 2d 230, 232 (D. Mass. 2010) (citing *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 9 (1st Cir. 2009)). Here, the Complaint does not assert any statutory basis for exercising personal jurisdiction over Mr. Becker. As for the constitutional basis, the Complaint merely lumps Mr. Becker in with his employer and co-defendant IAFF-FC. *See* Compl. at ¶ 9 (asserting personal jurisdiction exists because "Defendants IAFF-FC and Becker . . . conduct significant business in this District and have continuous and systemic contacts with this District").

This conclusory allegation does not satisfy Plaintiff's burden. First, the Massachusetts long arm statute is narrower than the federal Due Process Clause; it permits the exercise of personal jurisdiction over a foreign defendant only for causes of action "arising from" specific types of contacts with the Commonwealth. *See SCVNGR, Inc. v. PUNCHH, Inc.*, 478 Mass. 324, 328 (2017) (discussing Mass. Gen. L. c. 223A, § 3). Here, the sole claim asserted against Mr. Becker is a common law tort arising out of employment-related decisions Mr. Becker participated in as Plaintiff's supervisor during Plaintiff's brief employment with the IAFF-FC. None of those decisions touched Massachusetts: they were made in and delivered to Plaintiff exclusively from Washington, D.C.

Second, for purposes of the constitutional analysis, Mr. Becker cannot simply be lumped in with his employer; he has been personally named as a defendant, and jurisdiction must therefore exist over him personally. The Complaint fails to allege any facts supporting a conclusion that Mr. Becker personally conducts significant (or any) business in Massachusetts, or

that he has continuous and systematic contacts with Massachusetts – likely because such facts do not exist.  To the contrary, it is undisputed that Mr. Becker resides in Missouri and works at IAFF-FC's offices in Washington, D.C.  Compl. at ¶ 5.  He does not personally own property, pay taxes, conduct business, or otherwise have any connection with Massachusetts, and has only physically been present in this Commonwealth three times in his life.  Becker Decl. at ¶¶ 1, 8-9.

For the following reasons, the Court should dismiss Plaintiff's third cause of action because Plaintiff cannot carry his burden of establishing personal jurisdiction over Mr. Becker in this District.

### A. The Complaint Does Not Establish Personal Jurisdiction Over Mr. Becker Under the Massachusetts Long-Arm Statute.

The Massachusetts long arm statute, codified at Mass. Gen. L. c. 223A, § 3, "imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process," and thus "a determination under the long-arm statute is to precede consideration of the constitutional question."  *SCVNGR, Inc.*, 478 Mass. at 325 (citations omitted).

The Complaint does not identify which subsection of the long-arm statute Plaintiff relies upon to justify this Court's jurisdiction, but nonetheless names Mr. Becker as a defendant in the third cause of action for "tortious interference with advantageous employment relations," a common law tort under Massachusetts law.  *See* Compl. at ¶¶ 63-68.  To prove that tort, Plaintiff must prove in relevant part that Mr. Becker (1) was aware of Plaintiff's employment relationship with IAFF-FC; (2) "knowingly induced a breaking of the relationship;" and (3) did so intentionally via actions that were "improper in motive or means."  *See Jakuttis v. Town of Dracut, Mass.*, ___ F. Supp. 3d ___, 2023 WL 1993756, *23 (D. Mass. Feb. 14, 2023).  Because Mr. Becker was Plaintiff's supervisor throughout the relevant period, Plaintiff must also prove

5

that Mr. Becker acted with "actual malice," defined as a "spiteful, malignant purpose unrelated to a legitimate corporate interest." *Id.* (citations omitted).

Setting aside the dubious merits of Plaintiff's claim against Mr. Becker, the facts essential to its resolution clearly occurred exclusively in Washington, D.C. That is where all decisions concerning Plaintiff's employment relationship with IAFF-FC were made. *See* Compl. at ¶¶ 4-5, 38, 47; Becker Decl. at ¶ 9. It is also where Mr. Becker performed his duties as Plaintiff's supervisor, which included communicating and meeting with Plaintiff; observing and evaluating the quality of Plaintiff's work; communicating with and receiving feedback from others within IAFF-FC and third parties about the quality of Plaintiff's work; and participating in internal IAFF-FC meetings to discuss employment decisions relating to Plaintiff. *See* Becker Decl. at ¶¶ 4-5. Washington D.C. is also where Plaintiff was when he, first, was placed on a performance improvement plan after less than ten months on the job in May 2022 and, second, was offered a severance package and ultimately terminated seven months after that in January 2023. *See* Compl. at ¶¶ 38, 47; Becker Decl. at ¶¶ 7, 9.

The Massachusetts' long-arm statute does not permit Mr. Becker to be subject to suit in this district for a purported tort that took place in Washington D.C. *Cf.* Mass. Gen. L. c. 223A, § 3(c) (personal jurisdiction exists over foreign defendants for "causing tortious injury by an act or omission ***in this commonwealth***") (emphasis added). The one exception might be if Plaintiff had been injured in the Commonwealth, *see id.* at § 3(d), but he clearly was not.[5] Plaintiff resides, not in Massachusetts, but in Alfred, Maine, which is where he lived throughout his brief employment with IAFF-FC. Compl at ¶ 2, Becker Decl. at ¶ 7. Plaintiff has already admitted

---

[5] As discussed in Part B, *infra.*, Plaintiff cannot satisfy the other requirements of § 3(d) either, because Mr. Becker does not have regular or persistent contacts with, or derive any revenue from, this jurisdiction. *See* Compl. at ¶ 1.

that his conduct relevant to this lawsuit "did not occur primarily and substantially in Massachusetts." *See* Plaintiff's Answer to Counterclaims (ECF Docket No. 8) at ¶ 45. The Court should thus dismiss Mr. Becker as a defendant because Plaintiff cannot carry his burden of establishing that the Massachusetts long-arm statute authorizes jurisdiction over Mr. Becker in these circumstances.

### B. Due Process Does Not Permit the Exercise of Personal Jurisdiction Over Mr. Becker.

Plaintiff also fails the constitutional portion of his burden of proof. "Due process requires that [a] defendant[] have 'minimum contacts' with the forum state such that the 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Carp*, 754 F. Supp. 2d at 232 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The Complaint alleges that jurisdiction over Mr. Becker is proper because "IAFF-FC and Mr. Becker . . . conduct significant business in this District and have continuous and systemic contacts with this District." *Id.* at ¶ 9. This language parrots the legal test required to find general jurisdiction over a defendant. *See Carp*, 754 F. Supp. 2d at 232 ("General jurisdiction exists when the defendant has engaged in 'continuous and systematic activity,' unrelated to the suit, in the forum state"). Yet the Complaint does not contain any factual allegations supporting this assertion as it relates to Mr. Becker.

Instead, the Complaint attempts to lump Mr. Becker in with his employer for purposes of the jurisdictional analysis. But "jurisdiction over the individual officers of a corporation may not be based merely on jurisdiction over the corporation. There must be an independent basis for jurisdiction over" these individuals. *Id.* (quoting *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 906 (1st Cir. 1980)). Specifically, the "Court must inquire whether, under general principles

7

of agency law, the officer or employee derived personal benefit from his/her contacts in Massachusetts and/or acted beyond the scope of his/her employment." *Id.* at 233.

The Complaint alleges that Mr. Becker communicated at various times with Baystate Financial Services, LLC, which is a Massachusetts-based company, but not that Mr. Becker derived personal benefit from those communications or that the communications were beyond the scope of his work for the IAFF-FC. To the contrary, any communications between Mr. Becker and Baystate clearly fell within the scope of Mr. Becker's employment as Chief Operating Officer of IAFF-FC and Plaintiff's direct supervisor. The Complaint does not allege that Mr. Becker had <u>any</u> contacts with Massachusetts in his personal capacity, because he did not. At all relevant times, Mr. Becker resided in Missouri and worked in Washington, D.C., *id.* at ¶ 5, and did not personally conduct business, advertise, pay taxes, or own property in Massachusetts, or derive any income or other form of a personal benefit from Massachusetts. *See* Becker Decl. at ¶ 1. Simply put. contrary to Plaintiff's conclusory jurisdictional assertion, Mr. Becker personally conducts <u>zero</u> business in and has <u>zero</u> contacts with this District. *Id.*

Even if it were proper to look to conduct falling within the scope of Mr. Becker's employment, Plaintiff has still failed to allege the types of "continuous and systemic contacts" that would justify a finding of general jurisdiction. Indeed, the contacts alleged in the Complaint are not even sufficient to establish <u>specific</u> jurisdiction for purposes of the claim against Mr. Becker. "Specific jurisdiction exists where the plaintiff's cause of action arises from or relates to the defendant's contacts with the forum state." *Carp*, 754 F. Supp. 2d at 232. Whatever purported communications took place between Mr. Becker and Baystate, those communications do not constitute either the cause in fact or the legal cause of Plaintiff's alleged harm, which is the dispositive factor for deciding whether a claim "relates to" a defendant's contacts with the

forum.  *See Interface Group-Mass., LLC v. Rosen*, 256 F. Supp. 2d 103, 107 (D. Mass. 2003).  In *Interface*, the court found no personal jurisdiction in a tortious interference case notwithstanding that the defendant, who lived in California, had made "approximately half-a-dozen business trips" to Massachusetts (including to the property at issue in that case) and "a number of telephone calls and messages" to the plaintiff's general counsel in Massachusetts, because those contacts did not constitute the "interference" of which the plaintiff complained.  *Id.* at 106, 107-08.  As *Interface* explains:

> The main thrust of the plaintiff's cause of action is not Rosen's Massachusetts business trips or telephone contacts, but rather the very act (or acts) of "interference" that the plaintiff claims Rosen committed. . . . If Rosen did indeed "interfere" with the subtenancy contract between Key3 and Interface, the evidence produced by plaintiff is insufficient to show that he did so either by acting in Massachusetts or by means of any of his specific individual contacts with the Commonwealth.  Rather, the evidence indicates that any actions Rosen may have taken concerning Key3's decision to leave the offices at 300 First Avenue in Needham, Massachusetts, took place either in California or New York and not in Massachusetts or by means of his Massachusetts business trips or telephone contacts.

*Id.* at 108 (emphases in original).  The same is true here.  As discussed in Part A, *supra.*, Plaintiff's claim against Mr. Becker involves actions Mr. Becker purportedly took with regard to Plaintiff's employment with IAFF-FC.  All of those actions were taken exclusively in Washington, D.C.[6]

Nor is there any basis for a finding that Mr. Becker purposefully availed himself of this jurisdiction such that he could have reasonably foreseen he would be subject to suit here by

---

[6] Although Plaintiff alleges – with zero basis in fact – that Baystate tried to convince Mr. Becker to fire Plaintiff, that is not enough to establish personal jurisdiction over Mr. Becker given that Mr. Becker took no action concerning Plaintiff's employment in Massachusetts.  Instead, the undisputed (and undisputable) facts are that Mr. Becker received information concerning Plaintiff's performance from multiple sources while performing his job as Plaintiff's supervisor in his offices in Washington, D.C., and that every employment decision concerning Plaintiff was made and delivered to Plaintiff in Washington, D.C.  *See* Becker Decl. at ¶¶ 4-7, 9; *accord Interface*, 256 F. Supp. 2d at 107-108.

Plaintiff.  Baystate is the only connection to Massachusetts at issue in this lawsuit, and Plaintiff alleges it was <u>he</u> who first reached out to that company, not Mr. Becker.  *See* Compl. ¶¶ 25-26.  In this case, where the operative facts relating to Plaintiff's claim against Mr. Becker all took place in Washington, D.C. and where Plaintiff has already admitted that he has no material connection to Massachusetts related to this lawsuit, *see* ECF No. 8 at ¶ 45, it would be unreasonable as a matter of Due Process to require Mr. Becker to appear in this jurisdiction to defend himself.

## CONCLUSION

For the foregoing reason, the Court should grant the instant motion and dismiss the claim against Mr. Becker under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

>Respectfully submitted,
>
>_/s/ William Kettlewell_____
>William H. Kettlewell (BBO # 270320)
>Sara E. Silva (BBO # 645293)
>SILVA, KETTLEWELL & PIGNATELLI LLP
>10 High Street, Suite 505
>Boston, MA 02110
>(617) 351-9091
>bill.kettlewell@skpboston.com
>sara.silva@skpboston.com
>
>*Counsel for Defendant Kurt M. Becker*

Dated:  April 5, 2023

**CERTIFICATE OF SERVICE**

      I certify that this document filed through the CM/ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

                                             _/s/ William Kettlewell_
                                             William H. Kettlewell (BBO # 270320)