# UNITED STATES DISTRICT COURT
# F0R THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN F. HUGHES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:23-cv-10361-AK |
| v. ) | |
| ) | |
| BAYSTATE FINANCIAL SERVICES, LLC, ) | |
| IAFF FINANCIAL CORPORATION, ) | |
| KURT M. BECKER, DAVID C. PORTER, ) | |
| ) | |
| Defendants ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT IAFF FINANCIAL CORPORATION'S MOTION TO DISMISS

Plaintiff John F. Hughes ("Plaintiff") filed the instant lawsuit on February 17, 2023 against four defendants: two corporations, Baystate Financial Services, LLC ("Baystate") and IAFF Financial Corporation ("IAFF-FC"), and two individuals, David C. Porter ("Mr. Porter") and Kurt M. Becker ("Mr. Becker"). *See* ECF Docket No. 1 ("Compl.") at ¶¶ 3-6. Mr. Becker has since been dismissed from this lawsuit.[1]

The Complaint does not – and cannot – allege that the IAFF-FC took any action that could be considered a violation of law. Rather, at most, Plaintiff alleges that he had "concerns" about internal discussions involving certain potential courses of action that he believed might, if taken, violate some unidentified legal, regulatory, ethical and/or professional obligation. The

---

[1] On April 5, 2023, Mr. Becker moved pursuant to Fed. R. Civ. P. 12(b)(2) to dismiss the claim against him for lack of personal jurisdiction. *See* ECF Docket Nos. 15-16. On the day Plaintiff's opposition was due, Plaintiff filed a notice dismissing Mr. Becker from this lawsuit. *See* ECF Docket No. 24.

1

IAFF-FC denies that it or any of its employees ever contemplated participating in unlawful or improper conduct, and Plaintiff does not allege that IAFF-FC in fact did anything that constituted a violation of the law at any point in time. This alone warrants dismissal of both claims against the IAFF-FC.

With regard to Plaintiff's claim for wrongful termination in violation of public policy, even if the Complaint did allege a basis for concluding that some law conceivably covered Plaintiff's alleged concerns, nothing in the Complaint supports a conclusion that those concerns involved a well-established public policy as a matter of law. To the contrary, even assuming the Complaint's allegations are true for purposes of this Motion, there is zero basis to support a conclusion that Plaintiff's purported concerns about internal discussions fit within the narrow exception to the general rule of at-will employment afforded by this common law tort. And even if Plaintiff were able to get over these hurdles, there remains the fact that Massachusetts courts will not recognize a common law public policy right where a remedial statutory scheme already exists. Here, the Complaint expressly acknowledges the existence of such a remedy – the Dodd-Frank provisions on which the Fifth Cause of Action are purportedly based. For these reasons, the Fourth Cause of Action should be dismissed. In addition, the Fifth Cause of Action should be dismissed because the Complaint fails to allege facts that bring the Plaintiff within the definition of a "whistleblower" to whom the Dodd-Frank's anti-retaliation protections apply.

As more fully set forth below, the IAFF-FC requests that the Court issue an order dismissing both claims against it pursuant to Rule 12(b)(6) on the ground that neither cause of action states a legally cognizable claim.

**ARGUMENT**

**A. Standard of Review**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While "detailed factual allegations" are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

The Complaint in this case fails to satisfy this minimal burden. With regard to Massachusetts' common law tort of wrongful termination in violation of public policy, the Complaint fails to allege facts that could conceivably constitute a violation of any law, much less a criminal law, or conduct that threatened public safety. Rather, stripped of its rhetoric,[2] the Complaint merely alleges that Plaintiff objected to internal discussions about possible courses of action that were never finalized or taken. Rather than identify any particular law at issue, the Complaint refers generally to a hodgepodge of "state and federal law," and purported "unlawful, unethical, and unprofessional misconduct." That sort of non-specific allegation does not satisfy

---

[2] The Complaint uses inflammatory language designed to suggest unlawful conduct but does not allege any facts that support its rhetoric. Rhetorical labels and conclusory characterizations do not satisfy the Rules of Civil Procedure, and the Court should ignore them for purposes of this analysis. *See Twombly*, 550 U.S. at 555; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

the essential elements of a wrongful termination claim, even assuming the discussions occurred as alleged.

As for the Dodd-Frank claim, the Complaint fails to allege facts sufficient to establish that Plaintiff is a "whistleblower" to whom the Act's anti-retaliation protections attach.  The Complaint does not allege any actual violation of securities laws; it alleges merely that Plaintiff had purportedly "reasonable beliefs" or "concerns" about what the law and/or ethical considerations and/or professional standards allow.  That is not enough to satisfy the definition of a "whistleblower" under the plain statutory language and relevant Supreme Court precedent.

### B. The Complaint Fails to Allege Facts Sufficient to Establish a Common-Law Claim of Wrongful Termination in Violation of Public Policy.

"The baseline common law rule in Massachusetts is that an employer may lawfully terminate a relationship with an at-will employee at any time – for any reason, for no reason, and even for a reason that might be seen by some as unwise or unkind." *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 89 (1st Cir. 2016) (citing *Upton v. JWP Businessland*, 425 Mass. 756, 757 (1997) and *King v. Driscoll*, 418 Mass. 576, 582 (1994)).  Massachusetts recognizes "a narrow exception" to the rule of at-will employment for "terminations that conflict with sufficiently important and clearly defined public policies . . ." *Id.* (citations omitted).  Pursuant to that narrow exception, however, courts "have acknowledged very few statutory rights the exercise of which would warrant invocation of the public policy exception." *Id.* (quoting *King*, 418 Mass. at 584).  Whether an alleged retaliatory firing of an at-will employee would violate public policy is a question of law for the Court to decide, and Plaintiff bears the burden of establishing "that the substance of his workplace complaints for which he was [allegedly] discharged bears a direct connection to a sufficiently important and clearly defined public policy that warrants his

protection from termination." *Id.* at 90; *Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 151 (1989).

As a general matter, "[r]edress is available for employees who are terminated for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)." *Smith-Pfeffer* 404 Mass. at 149-50. The tort has thus been applied to circumstances where an employee did not give false testimony against a coworker at a criminal trial, *DeRose v. Putnam Mgt. Co.*, 398 Mass. 205, 207, 210 (1986), reported suspected criminal wrongdoing within the company, *Shea v. Emmanuel College*, 425 Mass. 761, 762-63 (1997), or were discharged for enforcing safety laws that protected the public at large, *Falcon v. Leger*, 62 Mass. App. Ct. 352, 364-65 (2004).

The tort does not, however, "cover all acts by an employee that are directed to illegal, unsafe, or unethical conduct." *Acher v. Fujitsu Network Communications, Inc.*, 354 F. Supp. 2d 26, 29 (D. Mass. 2005). Rather, in order for a claim to lie, an employee must "report, resist, or refuse to participate in activity that presents a threat to public health or safety," *id.* at 30, or that constitutes criminal activity, *Shea*, 425 Mass. at 762-63. *Accord Murray*, 821 F.3d at 91 n.4 (recognizing increasing doctrinal importance of imminence when analyzing potential threats to public health or safety); *Rodio v. R.J. Reynolds Tobacco Co.*, 416 F. Supp. 2d 224, 236 (D. Mass. 2006). This narrow focus ensures that the public policy exception is not used to "convert the general rule into a rule that requires just cause to terminate an at-will employee." *See King*, 418 Mass. at 584-85 (public policy not violated when employee fired for filing a shareholder derivative suit that sought to protect shareholder rights); *see also Wright v. Shriners Hospital*, 412 Mass. 469, 472-73 (1992) (hospital could fire nurse for complaining about quality of care

5

rendered to patients even though complaints may have been required by her professional ethical code); *Mistishen v. Falcone Piano Co.*, 36 Mass. App. Ct. 243, 246 (1994) (complaining about and threatening to reveal unfair and deceptive trade practices that violated consumer protection laws not protected in absence of threat to public safety).

Consistent with this principle, courts in this district have universally found employees who complain about internal company decisions that do not rise to the level of an actual or imminent crime or public safety threat are not protected from discharge. *See, e.g.*, *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 145 (1st Cir. 1998) (summary judgment to defendant where plaintiff "may well have established evidence sufficient for a jury to find that NYNEX terminated him based on the countless complaints he made and the animosity those complaints caused. Despite his assertions, however, there is nothing in the record demonstrating that Hinchey was terminated for reporting criminal conduct"); *accord Martinez v. N.E. Med. Center Hospitals, Inc.*, 307 F. Supp. 2d 257, 266 (D. Mass. 2004) (nurse's complaints about violations of patient rights, patient care, and billing and privacy issues not protected because internal complaints satisfy public policy exception only if they concern "criminal wrongdoing").

The Complaint's allegations in this case clearly do not meet this standard. The Fourth Cause of Action asserts that Plaintiff was fired for complaining about "violations of state and federal law and . . . unlawful, unethical and unprofessional misconduct," "refusing to participate in unlawful and unethical misconduct," and "refusing to keep silent." Compl. at ¶¶ 70, 72. Again, to be clear, Plaintiff's claims are not true. But even applying the required standard and considering them as true for purposes of this Motion, they still do not allege a violation of criminal law, or a threat to public safety, or any form of conduct that constitutes a well-established public policy. For that reason alone, the Complaint fails as a matter of law to set

forth a cognizable common law claim for wrongful termination.  *Accord Murray*, 821 F.3d at 91-92 (plaintiff's reliance on "a hodgepodge of miscellaneous state laws, federal regulations, and professional standards" was legally insufficient where those laws were "unrelated to, or [had] no more than a general connection to, the particular substance of certain workplace complaints that he described").

The narrative section of the Complaint, which purports to set forth the relevant background concerning Plaintiff's "concerns," does not save this legally deficient claim.  The substance of Plaintiff's allegations is that there were two topics of discussion – one involving the form and manner of potential payments to the IAFF-FC from various business partners in May 2022, and the other involving a proposed response to the SEC in December 2022.  Plaintiff allegedly did not agree with the courses of action being discussed and complained about them. *See generally* Compl. ¶¶ 30-33, 36-37, 42-44.  But there is no allegation – nor could there be – that these discussions violated any criminal law or threatened public safety.  There is not even an allegation that the alleged discussions actually blossomed into action; in fact, the Complaint makes clear that the topics of discussion either "ended without any resolution of the issue" or constituted mere "proposed" courses of action.  *Id.* at ¶ 39 & Part G.[3]  Thus, not only does the Complaint fail to specify which laws the IAFF-FC purportedly violated, it fails to allege facts supporting an inference that a violation of <u>any</u> law could have occurred.

Internal discussions that do not blossom into unlawful conduct do not violate public policy.  In *Acher v. Fujitsu Network Communications*, for example, the court dismissed a claim

---

[3] Part G of the Complaint purports to quote from a document that was allegedly prepared and circulated internally by an attorney for the IAFF-FC to certain IAFF-FC employees.  *See* Compl. ¶¶ 43-44.  Should discovery indicate that Plaintiff has taken any action that violates the IAFF-FC's attorney-client privilege or confidences, the IAFF-FC intends to pursue its rights against Plaintiff to the full extent of the law.

7

for wrongful termination in violation of public policy that was based merely on a proposed course of conduct.  *See Acher*, 354 F. Supp.2d at 29-31.  There, the plaintiff alleged that his employer Fujitsu, an electronics manufacturer that worked with Verizon, proposed pursuing a course of conduct with Verizon that would have violated federal law and "resulted in the creation of public safety concerns" threatening the integrity of Verizon's network.  *Id.* at 27-28.  The court held that even assuming the plaintiff reasonably believed the proposed conduct would have violated federal law and jeopardized public safety, his claim "suffer[ed] from a fundamental flaw" because "the alleged threat was not imminent, or even close to realization:"

> In the first place, the proposal would have had to have been made by Fujitsu.  The proposal would then have to be accepted by Verizon before any actual *threat* to public safety could have even materialized. . . . Even then, the *harm* would not have materialized without still another chain of events: the removal of the competitor's equipment would have to cause a failure of the telecommunications network that in turn would cause harm to human health or safety.  Under the circumstances, taken in their totality, the alleged threat to safety was too remote or speculative to support a claim for wrongful termination under Massachusetts law.

*Id.* at 31 (emphases in original); *accord Rodio*, 416 F. Supp. 2d at 237-38 (dismissing claim for wrongful termination in violation of public policy based on allegation that plaintiff was fired for refusing to tell retailers to break the law because, if a retailer believed the employer's offer did in fact violate the law, "it could have rejected or cancelled the contract").  Again, the IAFF-FC flatly denies that it or any of its employees ever contemplated taking unlawful action.  But even assuming the Complaint's allegations were accurate (which they are not), the Fourth Cause of Action still fails to allege unlawful conduct of any kind – much less unlawful conduct that fits within the narrow parameters of a common law wrongful termination claim.

Finally, to the extent that Plaintiff bases his Fourth Cause of Action on a claim that he was terminated in retaliation for complaining about violations of securities laws, his claim is precluded because "[i]t is well established that a plaintiff may not bring a common-law claim for

8

termination in violation of public policy where the legislature has provided the plaintiff with a detailed statutory remedy." *Sawyer v. Kindred Healthcare, Inc.*, 186 F. Supp. 3d 118, 127 (D. Mass. 2016) (citing *Melley v. Gillette Corp.*, 19 Mass. App. Ct. 511, 511-12 (1985), *aff'd* 397 Mass. 1004 (1986)). This is because "[t]he rationale for implying a private remedy under the public policy exception to the traditional rule governing at-will employment . . . is that unless a remedy is recognized, there is no other way to vindicate such public policy." *Valerio v. Putnam Assoc. Inc.*, 173 F.3d 35, 46 (1st Cir. 1999) (quoting *Melley*, 19 Mass. App. Ct. at 511-12). Here, Plaintiff's Fifth Cause of Action alleges a claim for retaliation on the ground that the IAFF-FC purportedly fired him for disclosing "what Plaintiff reasonably believed were violations [of] federal law and SEC regulations" in violation of the Dodd-Frank Act, 15 U.S.C. § 78u6(h)(1)(A). *See* Compl. at ¶¶ 76-77. The Dodd-Frank Act does indeed establish a statutory scheme that protects "whistleblowers" from being terminated in retaliation for complaining about securities law violations; accordingly, that statutory scheme bars any common law claim for wrongful termination on that basis. *Sawyer*, 186 F. Supp. 3d at 127; *accord Perez v. Greater New Bedford Voc. Tech. Sch. Dist.*, 988 F. Supp. 2d 105, 113 (D. Mass. 2013) (dismissing common law claim for wrongful termination where plaintiff also alleged she was protected from retaliatory termination under federal and state statutes "[b]ecause creation of a common-law cause of action would interfere with those [statutory] schemes"); *see also Valerio*, 173 F.3d at 45 (affirming dismissal of claim for wrongful termination in violation of public policy "where the relevant public policy has already been vindicated by a state or federal statute"). For all of these reasons, the Court should dismiss the Fourth Cause of Action for failure to state a claim.

### C. The Complaint Fails to Allege Facts Sufficient to Satisfy the Statutory Definition of a "Whistleblower" Under Dodd-Frank.

The Court should also dismiss the Fifth Cause of Action because the Complaint fails to allege a cognizable claim for retaliation under the Dodd-Frank Act. Dodd-Frank was passed in 2010 to "assist the [SEC] 'in identifying securities laws violations,'" in part, by establishing "a new, robust whistleblower program designed to motivate people who know of securities violations to tell the SEC." *See Digital Realty Trust, Inc. v. Somers*, __ U.S. __, 138 S. Ct. 767, 773 (2018) (quoting S. Rep. No. 111-176 at 38 (2010)). A "whistleblower" is defined by statute as "any individual who provides . . . information relating to a violation of the securities laws to the Commission in a manner established, by rule or regulation, by the Commission." *See id.* at 770 (quoting 15 U.S.C. § 78u-6(a)(6)). The statute "prohibits an employer from discharging, harassing, or otherwise discriminating against a whistleblower because of any lawful act done by the whistleblower in three situations." *Id.* at 774 (citing 15 U.S.C. § 78u-6(h)(1)(A)(i)-(iii)) (internal quotation marks omitted). Those situations include providing information to the SEC in accordance with the Act; initiating, testifying in, or assisting an SEC investigation; and making disclosures that are required or protected by specified laws. *Id.*

Here, the Complaint alleges that the IAFF-FC violated § 78u-6(h)(1)(A) "by discharging Plaintiff for" disclosing to the SEC "what Plaintiff reasonably believed were violations [of] federal law and SEC regulation." *See* Compl. ¶¶ 76-77. The Complaint does not allege that what Plaintiff reported was a violation of securities law. In fact, the Complaint is careful not to allege any actual violation of law – likely because there is no legal or factual basis to make such a claim. Instead, the Complaint couches the allegations in Plaintiff's "reasonable beliefs" or "concerns" about what the law and/or ethical standards and/or professional standards allow. *See, e.g., id.* at ¶¶ 36, 46, 50, 70, 76.

The Dodd-Frank Act does not purport to protect people who have "reasonable beliefs" or "concerns" that conduct might constitute a legal, ethical or professional violation. It protects "whistleblowers." *See* 15 U.S.C. § 78u-6(h) ("Protection for whistleblowers"). And, as set forth above, § 78u-6 defines a "whistleblower" as "any individual who provides . . . information relating to a <u>violation of the securities laws</u> to the Commission . . . ." *Id.* at § 78u-6(a)(6) (emphasis added). The Complaint does not allege that Plaintiff provided information "relating to a violation of the securities laws." It does not identify any securities law that was purportedly violated or allege that any "violation of the securities laws" in fact occurred. Nor does the Complaint allege any facts from which a "violation of the securities laws" could arguably be found. By instead couching its allegations in what Plaintiff "reasonably believed," the Complaint fails to allege facts sufficient to bring Plaintiff within the statutory definition of a "whistleblower" under § 78u-6(a)(6). And that, in turn, renders the Fifth Cause of Action legally deficient because the plain language of Dodd-Frank's anti-retaliation provisions apply only to "whistleblowers." *See* 15 U.S.C. § 78u-6(h); *accord Digital Realty*, 138 S. Ct. at 777 ("an individual who falls outside the protected category of 'whistleblowers' is ineligible to seek redress under the statute, regardless of the conduct in which that individual engages").

It is true that the SEC has issued a regulation that purports to expand the definition of "whistleblower" to include individuals "who provide the Commission with information in writing that relates to a <u>possible</u> violation of the federal securities laws . . . that has occurred, is ongoing, or is about to occur." *See* 17 C.F.R. § 240.21F-2(a) (emphasis added); *see also id.* at § 240.21F-2(d) (extending retaliation protection to individuals who satisfy the regulation's definition of "whistleblower" and who "reasonably believe that the information you provide to the Commission under paragraph (a) of this section relates to a <u>possible</u> violation of the federal

11

securities laws") (emphasis added). Adding the word "possible" before "violation of the federal securities laws" expands the definition of 'whistleblower" beyond the statutory definition. That is precisely what the Supreme Court has already cautioned the SEC cannot do, albeit in a slightly different context.

In *Digital Realty*, the Supreme Court rejected an earlier version of this same regulation that purported to extend Dodd-Frank's anti-retaliation protections to individuals who did not provide information directly to the SEC so long as the individual provided information in a manner covered by one of the three clauses set forth at 15 U.S.C. § 78u-6(h)(1)(A)(i)-(iii). *See Digital Realty*, 138 S. Ct. at 775, 777. The plaintiff in *Digital Realty* specifically relied upon that earlier version of 17 C.F.R. § 240.21F-2 to argue that the complaints he made to company supervisors gave him whistleblower protection even though he did not make a direct report to the SEC. *Id.* at 776. Both the district court and the Ninth Circuit Court of Appeals accepted the plaintiff's argument and denied the defendant's motion to dismiss. *Id*.

The Supreme Court reversed, holding that "[w]hen a statute includes an explicit definition, we must follow that definition, even if it varies from a term's ordinary meaning. This principle resolves the question before us." *Id.* at 776-77 (quoting *Burgess v. United States*, 553 U.S. 124, 130 (2008) (internal quotation marks omitted). The Court noted that the statute first defines "*who* is eligible for protection – namely a whistleblower who provides pertinent information 'to the Commission.'" *Id.* at 777 (citing 15 U.S.C. § 78u-6(a)(6)). The Court continued: "The three clauses of § 78u-6(h)(1)(A) then describe *what conduct*, when engaged in by a whistleblower, is shielded from employment discrimination." *Id.* (citing 15 U.S.C. § 78u-6(h)(1)(A)(i)-(iii)). The Court concluded: "An individual who meets both measures may invoke Dodd-Frank's protections. But an individual who falls outside the protected category of

'whistleblowers' is ineligible to seek redress under the statute, regardless of the conduct in which that individual engages." *Id.*

This case differs from *Digital Realty* only because that case involved the question of who needs to receive "the pertinent information" (the Commission vs a supervisor) in order for an individual to qualify as a "whistleblower," whereas this case involves the type of "pertinent information" the individual must provide. But the legal analysis is exactly the same. The statute defines a "whistleblower" as "any individual who provides . . . information relating to a <u>violation</u> of the securities laws . . . ." *See* 15 U.S.C. § 78u-6(a)(6) (emphasis added). The regulation defines "whistleblowers" as individuals who "provide the Commission with information in writing that relates to a <u>possible</u> violation of the federal securities laws . . . ." *See* 17 C.F.R. § 240.21F-2(a) (emphasis added). A "possible violation" is not the same thing as a "violation" and, under *Digital Realty*, the statutory definition prevails. Because the Complaint does not allege any conceivable "violation of the securities laws," the Fifth Cause of Action fails to set forth a cognizable Dodd-Frank Act claim.

Even accepting for the sake of argument that a "reasonable belief" of a "possible violation" could be sufficient to invoke the protections of a Dodd-Frank retaliation claim, for the reasons set forth in Part A, *supra.*, the Fifth Cause of Action still fails, because the Complaint does not allege facts that could conceivably support a "reasonable belief" that any "possible" violation of federal law and SEC regulation occurred at any point in time. At most, the Complaint alleges that individuals within the IAFF-FC had internal discussions that purportedly "concerned" Plaintiff, but that either "ended without any resolution of the issue" or constituted mere "proposed" courses of action. *Id.* at ¶ 39 & Part G. Internal discussions about possible or proposed conduct do not violate securities laws or any other type of law.

Indeed, contrary to the allegation set forth at ¶ 76 of the Complaint, Plaintiff did not in fact disclose any "violations [of] federal law and SEC regulation" to the SEC at any point in time. Rather, on January 17, 2023 at 5:55 pm, Plaintiff appears to have emailed a person at the SEC to say that he purportedly had "ethical concerns" about a subsidiary company's "application, business plan, and proposed operations," and asking whether that person had any availability to discuss. *See* Exhibit A.[4] Obviously, this email is legally insufficient to extend whistleblower protection. An oblique reference to "ethical concerns" is not "information relating to a violation of the securities laws," which is what the statute requires. *See* 15 U.S.C. § 78u-6(a)(6). The email does not even satisfy the regulation's simple requirement that a whistleblower provide the required "information in writing . . . ." *See* 17 C.F.R. § 240.21F-2(a)(1) (emphasis added). Plaintiff has produced nothing indicating that he received any response to this email or had any further communications with anyone at the SEC at any point in time. For all of these reasons, the Fifth Cause of Action is legally deficient and should be dismissed.

## CONCLUSION

The Complaint's allegations are inaccurate as a matter of fact. But even assuming the truth of those allegations, the claims against the IAFF-FC are not legally cognizable. For the foregoing reasons, the Court should grant the instant motion and dismiss the claims against the IAFF-FC under Fed. R. Civ. P. 12(b)(6).

---

[4] The Court can consider this email on a motion to dismiss because it is incorporated by reference into the Complaint. *See* Compl. at ¶¶ 46, 76; *Butler v. Balolia*, 736 F.3d 609, 611 (1st Cir. 2013).

Respectfully submitted,

_/s/ William Kettlewell_____
William H. Kettlewell (BBO # 270320)
Sara E. Silva (BBO # 645293)
SILVA, KETTLEWELL & PIGNATELLI LLP
10 High Street, Suite 505
Boston, MA 02110
(617) 351-9091
bill.kettlewell@skpboston.com
sara.silva@skpboston.com

*Counsel for Defendant IAFF Financial Corporation*

Dated: May 15, 2023

## CERTIFICATE OF SERVICE

    I certify that this document filed through the CM/ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

_/s/ William Kettlewell_ _____
William H. Kettlewell (BBO # 270320)