## UNITED STATES DISTRICT COURT
## F0R THE DISTRICT OF MASSACHUSETTS

———————————————————————
JOHN F. HUGHES,              )
                                )

      Plaintiff,         )

                                )      Civil Action No. 1:23-cv-10361-AK
v.                             )

                                )
BAYSTATE FINANCIAL SERVICES, LLC,    )
IAFF FINANCIAL CORPORATION,         )
KURT M. BECKER, DAVID C. PORTER,     )

                                )

      Defendants        )
———————————————————————)

## DEFENDANT IAFF FINANCIAL CORPORATION'S
## REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Pursuant to the Court's Standing Order Regarding Motion Practice, dated Feb. 8, 2023, Defendant IAFF Financial Corporation ("IAFF-FC") responds briefly to Plaintiff's Opposition (Doc No. 29) ("Opposition" or "Opp.") to the IAFF-FC's Motion to Dismiss (Doc No. 26, 27, 27-1).  The IAFF-FC does not and will not address the baseless and false nature of Plaintiff's factual allegations because, at the dismissal stage, the law requires that the Court accept those allegations as true.  But even applying that generous standard, Plaintiff's claims against the IAFF-FC fail to set forth a plausible theory of liability as a matter of black letter law and both claims (styled as the Fourth and Fifth Causes of Action) should be dismissed.

### I.     Plaintiff Does Not and Cannot Satisfy the Statutory and Regulatory Requirements of the Dodd-Frank Act.

Plaintiff purports to bring his Dodd-Frank claim (Fifth Cause of Action) under 15 U.S.C. § 78u-6, based on an email he sent to the Securities and Exchange Commission ("SEC") at 5:55 pm on January 17, 2023 – approximately 12 hours before he was scheduled to get on a plane to

Washington, D.C. to discuss his ongoing failures to perform the basic requirements of his job. *See* Complaint (Doc No. 1) ("Compl.") ¶¶ 46 & 76. That email was filed with the Court as Exhibit A to IAFF-FC's memorandum in support of its motion to dismiss. *See* Doc No. 27-1 ("Exhibit A"). Because Exhibit A is incorporated by reference into Plaintiff's Complaint, *see* Compl. at ¶ 46, the Court can and should consider it on a motion to dismiss. *See Butler v. Balolia*, 736 F.3d 609, 611 (1st Cir. 2013) (on motion to dismiss, court can examine "documents incorporated by reference into the complaint") (citing *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

Exhibit A makes clear that Plaintiff has no viable Dodd-Frank Act claim. "[A]n individual who falls outside the protected category of 'whistleblowers' is ineligible to seek redress under" 15 U.S.C. § 78u-6. *Digital Realty Trust, Inc. v. Somers*, __ U.S. __, 138 S. Ct. 767, 777 (2010). Section 78u-6 defines a "whistleblower" as follows:

> The term "whistleblower" means any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission.

*See* 15 U.S.C. § 78u-6(a)(6). Pursuant to § 78u-6(a)(6), the SEC has issued a regulation setting forth the "manner" in which "a violation of the securities laws" must be reported. *See* 17 C.F.R. § 240.21F-2. That regulation states, in relevant part:

> (1) You are a whistleblower for purposes of Section 21F of the Exchange Act (15 U.S.C. 78u–6) as of the time that, alone or jointly with others, you provide the Commission with information in writing that relates to a possible violation of the federal securities laws (including any law, rule, or regulation subject to the jurisdiction of the Commission) that has occurred, is ongoing, or is about to occur.

*See id.* at § 240.21F-2(a)(1). Plaintiff agrees that these provisions establish the statutory and regulatory framework that he must satisfy in order to bring his claim. *See* Opp. (Doc No. 29) at 15.

Exhibit A does not satisfy Dodd-Frank for two reasons. First, on its face, the email does not "relat[e] to a violation of securities laws;" it speaks only to vague "ethical concerns." *Compare* Exhibit A *with* 15 U.S.C. § 78u-6(a)(6). There is no mention of legal violations in Exhibit A at all, much less violations of securities laws, and there are no facts set forth in Exhibit A from which any such violation could be inferred. *See id.* That alone disposes of any argument that Plaintiff can satisfy the legal requirements necessary to bring a Dodd-Frank claim, as established by the plain language of the statute and recognized by binding Supreme Court precedent. *Digital Realty Trust, Inc*, 138 S. Ct. at 777 (analyzing 15 U.S.C. § 78u-6's anti-retaliation requirements).

Second, Exhibit A fails to satisfy the statutory requirement that the information relating to a securities law violation be provided "in a manner established, by rule or regulation, by the Commission." *See* 15 U.S.C. § 78u-6(a)(6). The SEC has adopted a regulation requiring such information to be provided "in writing." *See* 17 C.F.R. § 2401.21F-2(a)(1). As explained by the SEC, requiring putative whistleblowers to make their allegations in writing serves a practical purpose – it "presents, at most, a minimal burden to individuals who want to report potential securities law violations to the Commission while facilitating staff's use of the information." *See* SEC, Whistleblower Program Rules, 85 Fed. Reg. 70898-01, 70917 (Nov. 5, 2020). It also cuts down on meritless claims; in fact, the SEC specifically chose not to extend Dodd-Frank anti-retaliation protections to oral discussions because "protecting oral reports to the Commission could result in litigation disputes about what information was orally provided and on what dates." *Id.* Plaintiff's vague written reference to "ethical concerns" and request that the SEC find time to "discuss these concerns with me" is exactly the type of communication the SEC has deliberately

chosen to exclude from whistleblower protection.  *Compare* Exhibit A *with* 85 Fed. Reg. at 70917 *and* 17 C.F.R. § 2401.21F-2(a)(1).

Tellingly, Plaintiff does not address this issue at all.  The Opposition does not even mention Exhibit A, much less explain how it possibly satisfies the statutory and regulatory prerequisites for a viable Dodd-Frank claim.  Nor can this failing be remedied by amending the Complaint.  Plaintiff produced Exhibit A in response to a Rule 34 Request seeking "[a]ll documents concerning communications between Plaintiff . . . and the Securities and Exchange Commission that relate to any of the Defendants or issues raised in the Complaint . . . ."  No documents other than Exhibit A were produced in response to that discovery request.  Regardless of how Plaintiff might wish to wordsmith his allegations, Exhibit A proves that he does not satisfy the statutory prerequisites necessary to bring a Dodd-Frank Act claim as a matter of law.  For these reasons, the Fifth Cause of Action should be dismissed.

## II.    A Common Law Cause of Action for Wrongful Termination Does Not Exist When a Statute Protects the Public Policy at Issue.

The Fourth Cause of Action for common law wrongful termination should also be dismissed.  Plaintiff asserts that this claim is based on the same alleged conduct as his Dodd-Frank claim, *see* Opp. (Doc No. 29) at 13-14, and argues simply that Federal Rule of Civil Procedure 8 entitles him "to plead both causes of action against the IAFF-FC."  *Id.* at 14-15.

The IAFF-FC does not dispute that Rule 8 allows a complaint to contain different causes of action.  But to survive a motion to dismiss, each claim must be viable as a matter of law.  And here, the Fourth Cause of Action fails because Massachusetts law does not "recognize a common law cause of action [for wrongful termination] where the relevant public policy has already been

vindicated by a state or federal statute." *Valerio v. Putnam Assoc. Inc.*, 173 F.3d 35, 45 (1st Cir. 1999).[1]

In *Valerio*, the First Circuit recognized that "[t]he rationale for implying a private remedy under the 'public policy exception' to the traditional rule governing at-will employment . . . is that, unless a remedy is recognized, there is no other way to vindicate such a public policy." *Valerio*, 173 F.3d 35, 46 (1st Cir. 1999) (quoting *Melley v. Gillette Corp.*, 19 Mass. App. Ct. 511, 511-512 (1985), *aff'd* 397 Mass. 1004 (1986)). The court further recognized, however, that "where, as here, there is a comprehensive remedial statute, the creation of a new common law action based on the public policy expressed in that statute would interfere with that remedial scheme." *Id.* Guided by these principles, the First Circuit affirmed the district court's dismissal of a common law wrongful termination claim based on purported retaliation for complaints about not receiving overtime pay, because the Fair Labor Standards Act contained an anti-retaliation provision covering such complaints. *Id.* at 45-46.

Many courts in this district have done the same in different contexts. *See Sawyer v. Kindred Healthcare, Inc.*, 186 F. Supp. 3d 118, 127 (D. Mass. 2016) (dismissing claim for wrongful termination in retaliation for reporting patient abuse because reporting such conduct

---

[1] In an apparent effort to avoid the vast weight of Massachusetts law against him, Plaintiff drops a large footnote asserting that D.C. law would apply if the Court were required to perform a choice of law analysis. *See* Opp. (Doc No. 29) at 12 n.6. However, Plaintiff acknowledges that the first step in any such analysis would be "to determine whether an actual conflict exists between the substantive laws of the interested jurisdictions," and that "no such conflict exists" between Massachusetts and D.C. law. *Id.* Given Plaintiff's position that D.C. law does not conflict with Massachusetts law – and the fact that D.C. follows the exact same rule discussed here – the IAFF-FC continues to rely on Massachusetts law in this Reply Memorandum. *See Jones v. D.C. Water and Sewer Auth.*, 943 F. Supp.2d 90, 93-94 (D. D.C. 2013) (common law wrongful termination claim is "unavailable where the statute creating the relied-upon public policy already contains a specific and significant remedy for the party aggrieved by its violation") (citing *Kassem v. Washington Hosp. Center*, 513 F.3d 251, 254 (D. C. Cir. 2008) and quoting *Nolting v. Nat'l Capital. Grp., Inc.*, 621 A.2d 1387, 1390 (D.C. 1993)).

was protected by statute that included "a comprehensive remedial scheme to vindicate the public policy of protecting health care workers who report illegal conduct") (citations and internal punctuation omitted); *Perez v. Greater New Bedford Voc. Tech. Sch. Dist.*, 988 F. Supp. 2d 105, 113 (D. Mass. 2013) (common law wrongful termination claim dismissed where it was "duplicative of [plaintiff's] other claims of retaliation based on protected conduct under federal law and [the] Massachusetts whistleblower statute"); *Barbuto v. Advantage Sales and Marketing, LLC*, 477 Mass. 456, 471 (2017) (finding "no need and no reason to recognize a separate cause of action for wrongful termination based on the violation of public policy" for claim that plaintiff was terminated for using medical marijuana where "a competent employee has a cause of action for handicap discrimination"). Case law on this point is longstanding and clear: where a statute exists to protect a public policy, courts will not recognize a common law tort to protect the same public policy.

Plaintiff claims that the Dodd-Frank Act "encourages employees to blow the whistle on their employers' financial wrongdoing and shields them from retaliation when they do so." *See* Opp. (Doc No. 29) at 15 (citation and internal punctuation omitted). In other words, by Plaintiff's own admission, Dodd-Frank exists to vindicate the public policy he claims is at issue in his common law wrongful discrimination claim – the ability to complain about violations of securities laws without being fired for it. *Accord id.* at 15, n.9 (citing Dodd-Frank legislative history that "whistleblowers often face the difficult choice between telling the truth and the risk of committing career suicide"). The existence of Dodd-Frank thus precludes his common law claim because Dodd-Frank protects the public policy interest at issue.

It does not matter that Plaintiff cannot satisfy Dodd-Frank's statutory requirements and thus cannot bring a viable claim under that statute. The legislature is entitled to establish what is

required to allege cognizable harm, and the common law cannot be used to circumvent those statutory requirements. Nearly 40 years ago, the Supreme Judicial Court held exactly that:

> In this case we are asked to decide whether the plaintiff, who failed to follow the procedures set forth in G. L. c. 151B, may nevertheless bring an action against his employer for wrongful termination of employment on grounds of age discrimination. We adopt both the analysis and conclusion of the Appeals Court, and hold that the **<u>plaintiff may not bypass the provisions of the statute</u>**.

*See Melley*, 397 Mass. at 1004 (internal citation omitted) (emphasis added). Similarly, in *Perez*, the court dismissed the plaintiff's common law wrongful termination claim because the public policy at issue was addressed by the Massachusetts whistleblower statute, even though the court simultaneously dismissed the statutory whistleblower claim because it was untimely. *Perez*, 988 F. Supp. 2d at 113, n.4 ("Although the whistleblower claim is dismissed based on the statute of limitations, the Court cannot create a separate common-law remedy under Massachusetts law merely because plaintiff failed to timely prosecute that claim."); *see also Ryan v. Holie Donut, Inc.*, 82 Mass. App. Ct. 633, 640-41 (2012) (claim that plaintiff was wrongfully terminated for reporting sexual harassment by third party police officer to her employer "fell within the statutory jurisdiction of the MCAD" and plaintiff "should have submitted an administrative complaint to the agency within 300 days of her retaliatory discharge, and not commenced a common-law action in the Superior Court almost three years later"). The reasoning behind each of these cases – and many others like them – is that courts will not recognize a common law remedy where a statutory scheme exists to protect the public policy at issue. In other words, when the legislature has seen fit to establish the parameters for when and how to protect a policy interest, courts will not allow plaintiffs to bypass those parameters by relying instead on a common law claim.

As in the above-cited cases, Plaintiff's inability to satisfy the statutory requirements for protection under Dodd-Frank does not justify recognizing a common law cause of action arising out of the same alleged conduct. Congress has plainly spoken as to when a person will be entitled to anti-retaliation protection for voicing concerns about conduct falling within the purview of the SEC, and a plaintiff who fails to satisfy those statutory requirements cannot avoid them by restyling their claim as a common law tort. Such a result would clearly "interfere with" the statutory scheme established by Dodd-Frank. *Accord Guilfoile v. Shields Pharm., LLC*, 2021 WL 4459515, *7 (D. Mass. Sept. 29, 2021) (awarding summary judgment to defendants where plaintiff's wrongful termination claim "not only invokes the same public policy established by the FCA, it arises from the very acts giving rise to his federal claim") (internal quotation marks and citation omitted).[2]

For these reasons and the reasons set forth in the IAFF-FC's opening brief (Doc No. 27, 27-1), any amendment of the Complaint will be futile, and the Court should dismiss both the Fourth and Fifth Causes of Action against the IAFF-FC for failure to state a claim.

---

[2] The only other basis Plaintiff suggests for finding a public policy-based common law claim is a passing reference in his Opposition to 18 U.S.C. § 1001. But Exhibit A puts the lie to any insinuation that § 1001 or any other law was violated at any point in time. *See* Exhibit A. If Plaintiff believed any unlawful conduct was occurring at the IAFF-FC, he would have said so in his email to SEC – particularly in light of the fact that (1) he sent the email less than 24 hours before attending the meeting where he knew he would be let go, and (2) at the time he wrote Exhibit A, he was represented by his current counsel and had been for at least seven months prior.

Respectfully submitted,

_/s/ William Kettlewell_____
William H. Kettlewell (BBO # 270320)
Sara E. Silva (BBO # 645293)
SILVA, KETTLEWELL & PIGNATELLI LLP
10 High Street, Suite 505
Boston, MA 02110
(617) 351-9091
bill.kettlewell@skpboston.com
sara.silva@skpboston.com

*Counsel for Defendant IAFF Financial Corporation*

Dated: June 2, 2023

## CERTIFICATE OF SERVICE

I certify that this document filed through the CM/ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

_/s/ William Kettlewell_____
William H. Kettlewell (BBO # 270320)