UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN F. HUGHES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:23-cv-10361-AK |
| v. | ) | |
| | ) | |
| BAYSTATE FINANCIAL SERVICES, LLC, | ) | |
| IAFF FINANCIAL CORPORATION, | ) | |
| KURT M. BECKER, DAVID C. PORTER, | ) | |
| | ) | |
| Defendants | ) | |

**DEFENDANT IAFF FINANCIAL CORPORATION'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION**

This Court should dismiss with prejudice Plaintiff's claims for retaliatory discharge arising under the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank"), codified at 15 U.S.C. § 78u-6, and for common law wrongful termination in violation of public policy, as recommended by the Report and Recommendation (ECF No. 70) at 9-17.

The governing legal requirements and operative facts are not in dispute here. Plaintiff acknowledges that in order to be eligible to bring his Dodd-Frank claim, he must have provided "information relating to a violation of the securities laws to the [Securities and Exchange] Commission, in a manner established, by rule or regulation, by the Commission." *See* Plaintiff's Objections (Doc. No. 75) at 13 (quoting 15 U.S.C. § 78u-6(a)(6)). Plaintiff further acknowledges that the Securities and Exchange Commission ("SEC") has promulgated a regulation requiring that such information be provided "in writing." *Id.* at 13, n. 8 (quoting 17 C.F.R. § 240.21F(a)(1)). And Plaintiff acknowledges that the only "writing" he ever provided to the SEC is an email he sent on January 17, 2023, in which he reported that he had "ethical

1

concerns" about one of the IAFF-FC's subsidiary company's "application, business plan and proposed operations." *Id.* at 10; *see also* Exhibit A (Plaintiff's 1/17/23 email to SEC). On its face, Plaintiff's email to the SEC did not communicate a "violation" of <u>any</u> law, much less a "violation of the securities laws" as required by Dodd-Frank. Nor has Plaintiff ever alleged that the IAFF-FC in fact violated a securities law at any point in time, or even identified a securities law that the IAFF-FC could conceivably have violated.

Plaintiff has had now <u>seven</u> opportunities to come up with a purported violation of securities laws, including in: (1) his complaint (ECF No. 1); (2) his opposition to the IAFF-FC's motion to dismiss (ECF No. 29); (3) his proposed amended complaint (ECF No. 31), (4) his response to the IAFF-FC's opposition to his motion to amend the complaint (ECF No. 40); (5) oral argument to the Magistrate Judge on November 17, 2023; (6) his objections to the Report and Recommendation (ECF No. 75); and of course (7) the January 17, 2023 email, which is the only communication he ever had in writing with the SEC (*see* Exhibit A). The Report and Recommendation's conclusions that Plaintiff "does not qualify as a 'whistleblower' under 15 U.S.C. § 78u-6(a)(6) of [Dodd-Frank] and therefore is not entitled to the Act's anti-retaliatory protections," and that the claim should be dismissed with prejudice are legally correct. *See* Report and Recommendation (ECF No. 70) at 9, 17.

The same is true for Plaintiff's common law wrongful termination claim. Plaintiff agrees with the Magistrate Judge that this type of claim is both "narrow" and precluded when "the legislature has already create[d] a specific, statutory cause of action to enforce the public policy at issue." *See* Plaintiff's Objections (ECF No. 75) at 14-15 (citation omitted). Plaintiff has repeatedly asserted that his common law claim is based on the (false) allegation that he was terminated because he refused to "participate in the submission of false representations to the

SEC" and instead "reported his concerns to the SEC." *See* Plaintiff's Opposition to Dismissal (ECF No. 29) at 13-14. The gravamen of his claim thus invokes a "'public policy' of protecting whistleblowers from retaliation," which in turn "is precisely the public policy protected by the Dodd-Frank Act." Report and Recommendation (ECF No. 70) at 17. The Court should reject Plaintiff's effort to avoid dismissal of this claim by arguing new bases for it in his Objections to the Report and Recommendation. Instead, the Court should adopt the Report and Recommendation's conclusion that this claim must also be dismissed with prejudice. *Id.* at 17.

For these reasons and as more fully set forth below, the Court should adopt the Report and Recommendation in full on the dismissal of these two claims.

## ARGUMENT

**A. The Court Should Adopt the Report and Recommendation's Analysis and Conclusions, and Dismiss the Dodd-Frank Act Claim with Prejudice.**

The Report and Recommendation correctly applied the governing law to Plaintiff's Dodd-Frank claim and correctly concluded that claim must be dismissed with prejudice. The Report looked to the statutory definition of a "whistleblower," recognized that definition "describes <u>who</u> is eligible for protection," and further recognized that "an individual who falls outside the protected category of 'whistleblowers' is ineligible to seek redress under [that] statute." *See* Report and Recommendation (ECF No. 70) at 9-11 (citing 15 U.S.C. §§ 78u-6(a)(6), (h)(1)(A)-(B); 17 C.F.R. § 240.21F-2(b)(1)-(3); *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 155-59, 161, 163 (2018); *Rimini v. JP Morgan Sec. LLC*, 2018 WL 11229124, *2 (1st Cir. 2018) (unpubl.); *Trivedi v. Gen. Elec. Co.* 2020 WL 9744753, *5 (D. Mass. Aug. 11, 2020), report and recommendation adopted and case dismissed against all defendants, 2021 WL 2229088, *1 (D. Mass. May 27, 2021) (unpubl.). Those are the correct governing legal principles. *See* Plaintiff's Objections (Doc. No. 75) at 12-13.

3

The Report correctly set forth the plain language of the statute, which states that a "whistleblower" must provide "information relating to a violation of the securities laws to the [Securities and Exchange] Commission, in a manner established, by rule or regulation, by the Commission." *Id.* at 9 (quoting 15 U.S.C. § 78u-6(a)(6)). Congress specifically defined what the "securities laws" are for purposes of the Dodd-Frank Act at 15 U.S.C. § 78c(a)(47); that provision lists seven enumerated laws that are themselves codified in Title 15 of the United States Code. *See* 15 U.S.C. § 78c(a)(47).[1] None of those "securities laws" are mentioned anywhere in the complaint, the proposed amended complaint, Plaintiff's January 17, 2023 email to the SEC, or Plaintiff's Objections to the Report and Recommendation.

The Report and Recommendation also correctly determined that Plaintiff's January 17, 2023 email to the SEC was "insufficient to notify the SEC of any violation and potential violation of securities laws." *See* Report and Recommendation (ECF No. 70) at 12. In making this determination, the Magistrate Judge gave Plaintiff the benefit of a generous review standard. First, she focused only on the absence of any allegation of a "violation of securities laws" in his email and did not consider the overall paucity of the information he provided to the SEC compared to the information that the SEC asks Dodd-Frank "whistleblowers" to provide. *See* Exhibit B (SEC Form TCR: Tip, Complaint or Referral).[2] The SEC has a form for this purpose that seeks six full pages of information, including: (1) a statement "in detail of all facts pertinent

---

[1] The definition reads in full, "The term 'securities laws' means the Securities Act of 1933 (15 U.S.C. 77a et seq.), the Securities and Exchange Act of 1934 (15 U.S.C. 78a et seq.), the Sarbanes-Oxley Act of 2002, the Trust Indenture Act of 1939 (15 U.S.C. 77aaa et seq), the Investment Company Act of 1940 (15 U.S.C. 80a-1 et seq.), the Investment Advisers Act of 1940 (15 U.S.C. 80b et seq.), and the Securities Investor Protection Act of 1970 (15 U.S.C. 78aaa et seq.)." *See* 15 U.S.C. § 78c(a)(47).

[2] Available at https://www.sec.gov/about/forms/formtcr.pdf, last visited March 22, 2024.

to the alleged violation" and an explanation for "why the complainant believes the acts described constitute a violation of the federal securities laws" (Question 8); (2) a description of "all supporting materials in the complainant's possession" (Question 9); and (3) a declaration signed under the penalties of perjury that the information contained on the form is true, correct and complete to the best of the declarant's knowledge, information, and belief (Part F, Whistleblower's Declaration). *See id.* at pp. 4, 7. Obviously, Plaintiff's email did not come close to providing this level of information. *Compare* Exhibit A to Exhibit B.

Second, the Magistrate Judge considered whether Plaintiff's email was sufficient to notify the SEC of a "potential violation of securities laws," notwithstanding her recognition that Dodd-Frank's statutory language does not extend whistleblower protection to individuals who report "potential" or "possible" violations, and that the "less-expansive" statutory definition controls the legal analysis. *See* Report and Recommendation at 9, n. 2 (citing *Digital Realty*, 583 U.S. at 163). Even then, the Magistrate Judge still found that Plaintiff's email failed as a matter of law because it "did not assert . . . that there had been a violation of securities laws, much less identify any specific laws." *See* Report and Recommendation (ECF No. 70) at 11-12. That finding is evident from the face of the email itself. *See* Exhibit A.

Plaintiff's failure to identify, mention, or allege any securities law violation in his email to the SEC is telling in light of the fact that he is, by his own assertion, a "highly accomplished financial consultant and advisor with over 30 years of experience." *See* Plaintiff's Objection (ECF No. 75) at 5. Moreover, there is no dispute that he was represented by his litigation counsel at the time he wrote his email to the SEC and had been represented by that same counsel for at least seven months prior to that. In light of Plaintiff's purported experience in the financial world and the fact that he was represented by litigation counsel for most of his tenure

5

with the IAFF-FC, the most obvious inference to be drawn from Plaintiff's failure to identify <u>any</u> violation of <u>any</u> securities laws (or any other laws) in his email to the SEC is that there were none.

Plaintiff has no answer to any of this. Instead, he tries to pretend that because his email references both an "IA application number" and "the fact that Plaintiff had talked with the SEC before," see Plaintiff's Objections (ECF No. 75) at 14, the Court can simply ignore that he did not identify any purported "violation of securities laws" in writing and thus does not meet the statutory definition of a "whistleblower" in Dodd-Frank. *See* 15 U.S.C. § 78u-6(a)(6) & 17 C.F.R. § 240.21F-2(b)(1)-(3). The Court should reject that misleading suggestion because it conflicts with both the governing statutory language and binding Supreme Court precedent instructing that this Court must apply that language as it is written. *See Digital Realty*, 583 U.S. at 160 (15 U.S.C. § 78u-6(a)(6) must be analyzed under standard rule of construction that "[w]hen a statute includes an explicit definition, we must follow that definition, even if it varies from a term's ordinary meaning.") (citation omitted).[3]

The Dodd-Frank Act does not purport to protect people who have "ethical concerns;" it protects "whistleblowers." *Compare* Exhibit A *with* 15 U.S.C. § 78u-6(h) ("Protection for whistleblowers"). The statute defines a "whistleblower" as "any individual who provides . . . information relating to a <u>violation of the securities laws</u> to the Commission . . . ." 15 U.S.C. § 78u-6(a)(6) (emphasis added); *accord* Report and Recommendation at 9. Plaintiff's email on its face did not provide any information "relating to a violation of the securities laws." It did not identify any securities law that was purportedly violated or allege that any "violation of the

---

[3] Although irrelevant to the legal analysis, the facts asserted by Plaintiff at page 14 of his Objection are not alleged in either the complaint or the proposed amended complaint. *See generally* Complaint (ECF No. 1); Proposed Amended Complaint (ECF No. 31) at Exhibit A.

securities laws" had occurred. It did not even list any facts from which a "violation of the securities laws" could arguably be found. From this, the Report and Recommendation drew the inevitable conclusion that Plaintiff "does not qualify as a whistleblower, and he cannot invoke the anti-relation provisions of the Act." *See id.* at 12; *accord Digital Realty*, 583 U.S. at 161 ("an individual who falls outside the protected category of 'whistleblowers' is ineligible to seek redress under the statute, regardless of the conduct in which that individual engages"). The Court should adopt that conclusion and dismiss Plaintiff's claim with prejudice.

**B. The Court Should Adopt the Report and Recommendation's Analysis and Conclusions and Dismiss the Wrongful Termination Claim with Prejudice.**

The Report and Recommendation also correctly applied the governing law to the Plaintiff's common law wrongful termination claim and correctly concluded that claim must be dismissed with prejudice because it is precluded by the existence of Dodd-Frank.

Both Massachusetts and District of Columbia common law recognize a "narrow exception" to the general rule that "an at-will employee can be fired at any time for almost any reason or for no reason at all." *See* Report and Recommendation (ECF No. 70) at 13-14 (citing *Guilfoile v. Shields Pharm., LLC*, 2021 WL 4459515, *7 (D. Mass. Sept. 29, 2021) and *Vasquez v. Whole Foods Market, Inc.*, 302 F. Supp. 3d 36, 54 (D. D.C. 2018)) (further citations and internal punctuation omitted). And even within that narrow exception, both jurisdictions "recognize that a common-law claim for wrongful termination is precluded where there is an existing statutory framework which already addresses the public policy at issue." *Id.* at 14-15 (citing *Vazquez*, 302 F. Supp. 3d at 54 and *Perez v. Greater New Bedford Vocational Tech. Sch. Dist.*, 988 F. Supp. 2d 105, 113 (D. Mass. 2013)).

Plaintiff has repeatedly asserted that his wrongful termination claim is based on the (false) allegation that he was terminated because he refused to "participate in the submission of

7

false representations to the SEC" and instead "reported his concerns to the SEC." *See* Plaintiff's Opposition to IAFF-FC's Motion to Dismiss (ECF No. 29) at 13-14; *see also* Complaint (ECF No. 1) at Part F (alleging "Plaintiff Makes a Report to the SEC and his Employment is Terminated"); Plaintiff's Motion to Amend (ECF No. 31) at Exhibit A, Part H (same). As correctly found by the Report and Recommendation, the gravamen of his claim thus invokes a "'public policy' of protecting whistleblowers from retaliation," which in turn "is precisely the public policy protected by the Dodd-Frank Act." Report and Recommendation (ECF No. 70) at 16-17. Thus, Dodd-Frank precludes Plaintiff's common law wrongful termination claim, and that claim must also be dismissed with prejudice. *Id.* at 17.

Plaintiff now tries to spin this claim as pertaining to something other than what he alleged. Specifically, Plaintiff now claims that he was "an officer of a wholly owned subsidiary of a labor union," that his position made him a "union official" under 29 U.S.C. § 501, that he was fired "for refusing to violate the mandates of Section 501," and that his termination therefore "violates public policy." *See* Plaintiff's Opposition (ECF No. 75) at 15-16. Where to begin? First, Plaintiff is not and never has been a "union official" under any legal definition. He is not an officer, agent, shop steward, or other representative of a labor organization. *Cf.* 29 U.S.C. § 501(a). He has never responded to a structural fire or any fire, is not and never has been a firefighter, and has never been a member of the International Association of Fire Fighters, much less an elected "union official" of that organization within the meaning of § 501. For seventeen months, Plaintiff was an at-will employee working for the IAFF-FC, a for-profit corporation. Plaintiff was not even an "officer" of the IAFF-FC; he was the Director of Investment and Finance for a brief period of time, nothing more. *See* Complaint (ECF No. 1) at ¶ 1. It is true that the IAFF-FC is wholly owned by the IAFF and serves IAFF members, but that does not

make the IAFF-FC a "labor organization." There is simply no universe in which 29 U.S.C. § 501 – which establishes the fiduciary duties of "officers, agents, shop stewards, and other representatives of a labor organization" – applies to Plaintiff.

<u>Second</u> and more to the point, neither the complaint nor the amended complaint says anything about Title 29 or asserts that Plaintiff was a union official or that he was fired for refusing to comply with 29 U.S.C. § 501. *See generally* ECF Nos. 1, 31. And, <u>third</u>, even if Plaintiff was somehow subject to 29 U.S.C. § 501, that statute establishes a framework for remedying any statutory violations. *See* 29 U.S.C. § 501(b)-(c). In other words, Congress has already created a specific, statutory framework to enforce the public policy recognized in § 501 and, in turn, neither Massachusetts nor the District of Columbia would recognize a common law tort for wrongful termination here. *Accord* Report and Recommendation at 14-15 (citations omitted); *see also Carson v. Sim*, 778 F. Supp. 2d 85, 97 (D. D.C. 2011) (wrongful termination claim "must be firmly anchored in either the Constitution or in a statute or regulation which clearly reflects the particular 'public policy' being relied upon,' and it must arise from a statute or regulation that does not provide its own remedy") (citations omitted). The Court should thus reject this argument out of hand –because it is both factually untrue and legally untenable.

Plaintiff's argument that the IAFF-FC terminated him for refusing to violate 18 U.S.C. § 1001 fares no better. Here again, neither the complaint nor the proposed amended complaint alleges that the IAFF-FC required him to make a false statement in violation of § 1001. *Accord* Report and Recommendation (ECF No. 70) at 16, n. 5. And even if Plaintiff had made such an allegation, as the District of Columbia expressly found ten years ago, when it comes to allegations of wrongdoing involving mattes within the purview of the SEC, "a suitable remedy for termination in violation of the public policy expressed in [§ 1001] already exists under [the]

9

Sarbanes-Oxley and Dodd-Frank statutes." *See Taylor v. Fannie Mae*, 65 F. Supp. 3d 121, 127 (D. D.C. 2014). As the Report and Recommendation concluded, Dodd-Frank establishes the statutory framework for when a person can be protected from retaliatory discharge involving matters that fall within the purview of the SEC, and a wrongful termination claim based on alleged violations of § 1001 in that context is precluded under both D.C. and Massachusetts common law. *Id.*; *see also Valerio v. Putnam Assoc. Inc.*, 173 F.3d 35, 45-46 (1st Cir. 1999) (affirming dismissal of claim for wrongful termination in violation of public policy "where the relevant public policy has already been vindicated by a state or federal statute").[4]

Plaintiff cites *Adams v. George W. Cochran & Co., Inc.*, 597 A.2d 28 (D.C. App. Ct. 1991) and other cases for the unremarkable proposition that a common law claim will lie when an employee is fired for refusing to break the law. *See* Plaintiff's Objection (ECF No. 75) at 14. To be clear, that is not the case here – and Plaintiff's claims to the contrary have been proven false in discovery.[5] But even giving Plaintiff the benefit of his **false** allegations that he was

---

[4] Plaintiff's proposed amended complaint does not allege that he was terminated in violation of any specific law or public policy, but it does include footnotes to two sources: *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 194 (1963) and 18 U.S.C. § 1001. To the extent Plaintiff intended these citations to inform his pleading obligations, they merely demonstrate that the gravamen of Plaintiff's claim is that he was fired in retaliation for complaining to the SEC and/or refusing to lie to the SEC, both of which are precluded by Dodd-Frank. *Accord* Report and Recommendation (ECF No. 70) at 19 ("Hughes has not asserted any new facts or law which would allow him to assert a common law claim of retaliation that was not precluded by the Dodd-Frank statutory scheme.").

[5] Unlike in *Adams*, where the defendant employer conceded "that it fired Adams for his refusal to break the law," *Adams*, 597 A.2d at 30 n.2, the IAFF-FC flatly denies that it or any of its employees ever contemplated or discussed participating in wrongful conduct at any point in time. Plaintiff was fired because of his needless and persistent personality clashes with colleagues and third parties, and his long history of poor job performance, which included poor judgment, lack of competence, and an inability to learn from or work with others. Moreover, Plaintiff's deposition and other discovery has uncovered at least three additional categories of wrongful conduct during Plaintiff's employment that independently support his termination – including that he lied about his work history and qualifications when he was hired, and that he wrongfully

terminated for complaining of internal discussions about things he thought were wrongful, that is not the same thing as an allegation that he was fired because he refused to break a law.[6]

Requiring common law plaintiffs to identify the laws they allege were violated, and keeping wrongful termination claims narrowly focused, ensures that the common law is not used to "convert the general rule into a rule that requires just cause to terminate an at-will employee." *See King*, 418 Mass. at 584-85 (public policy not violated when employee fired for filing a shareholder derivative suit that sought to protect shareholder rights); *see also Wright v. Shriners Hospital*, 412 Mass. 469, 472-73 (1992) (hospital could fire nurse for complaining about quality of care rendered to patients even though complaints may have been required by her professional ethical code); *Mistishen v. Falcone Piano Co.*, 36 Mass. App. Ct. 243, 246 (1994) (complaining about and threatening to reveal unfair and deceptive trade practices that violated consumer protection laws not protected in absence of threat to public safety). It also ensures that the common law is not used to evade or otherwise interfere with an existing statutory framework designed to protect the public policy at issue, such as 15 U.S.C. § 78u-6 or 18 U.S.C. § 1001 or

---

attempted to enrich himself through a secret side deal with a company he had recommended to the IAFF-FC. *See also* ECF No. 77 (Response to Objections by Baystate Financial Services, LLC).

[6] A common law claim also does not lie when internal discussions do not blossom into actual conduct. *See Acher v. Fujitsu Network Communications, Inc.*, 354 F. Supp. 2d 26, 29-31 (D. Mass. 2005) (complaints solely about internal discussions do not give rise to common law wrongful termination claim because the law protects this "important form of freedom of association from undue interference by the courts"); *see also Rodio v. R.J. Reynolds Tobacco Co.*, 416 F. Supp. 2d 224, 238 (D. Mass. 2006) (plaintiff's "criticism of the company's pricing policy involved only an internal company matter that 'could not be the basis of a public policy exception to the at-will rule'") (quoting *Wright v. Shriners Hosp. for Crippled Children*, 412 Mass. 469, 474 (1992)); *accord Murray v. Warren Pumps, LLC*, 821 F.3d 77, 89, 91 n.4 (1st Cir. 2016); *Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 151 (1989) ("internal matters, including internal policies could not be the basis of a public policy exception to the at-will rule").

29 U.S.C. § 501. *Accord Sichani v. Wash. Metro. Area Transit Auth.*, 2023 WL 7279254, *6 (D. D.C. Nov. 3, 2023) ("[t]he public policy exception is unavailable where the very statute creating the relied-upon public policy already contains a specific and significant remedy for the party aggrieved by its violation . . . even though these statutes are, in practice, unavailable to" a plaintiff); *Nolting v. Nat'l Cap. Grp., Inc.*, 621 A.2d 1387, 1388-89 (D.C. 1993) ("[W]e see no basis for any argument that in enacting [a] provision barring retaliatory discharge, the Council contemplated that any relief would be available for its violation apart from that expressly provided for.").

Because Plaintiff's common law wrongful discharge claim invokes a public policy addressed (and precluded) by Dodd-Frank, the Court should dismiss this claim with prejudice as well.

### C. Plaintiff's Claims Are Not Legally Viable and Any Attempt to Amend the Complaint Would Be Futile.

Plaintiff's final ask is that the Court allow him to re-plead these claims in his proposed amended complaint. Here, again, the Report and Recommendation was correct. The proposed amended complaint does not change the Dodd-Frank claim at all; it continues to rely on the email attached at Exhibit A as the only writing Plaintiff submitted to the SEC, and that email is clearly deficient under 15 U.S.C. § 78u-6(a)(6). And the proposed amended complaint does not change the common law wrongful termination claim in any material way, as demonstrated by Plaintiff's Objection, which has to rely on even newer grounds (29 U.S.C. § 501 and 18 U.S.C. § 1001) that do not appear anywhere in the proposed amended complaint –and that still do not establish a viable claim. *Compare* Plaintiff's Objection at 15-16 *with* Part B, *infra.*

The Court should also reject Plaintiff's footnoted assertion that he "intends to add additional facts . . . in support of his claims," *see* Plaintiff's Objection (ECF No. 75) at 18 n.10).

As a matter of procedure, Plaintiff was fully aware of the deficiencies with his claims when he proposed to amend his complaint, because the IAFF-FC's motion to dismiss was already briefed and on file – and he was also fully aware that this Court had set a firm deadline for him to amend his complaint, which was fast approaching. *See* Plaintiff's Motion to Amend (ECF No. 31) at 2, ¶ 3 (recognizing that the "deadline for the amendment of the pleadings is June 30, 2023"). Nor has Plaintiff identified even a single fact developed in discovery in this case that could assist him. He references only purported "oral communications that preceded his email to the SEC." Plaintiff's Objections (ECF No. 75) at 18, n.10. As an initial comment, Plaintiff cannot possibly be suggesting that he was unaware of his own purported "oral communications" with the SEC when he filed his proposed amended complaint.[7] More to the point, his oral communications are legally irrelevant, because Dodd-Frank requires putative whistleblowers to provide "information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission" – that is, "in writing." *See* 15 U.S.C. § 78u-6(a)(6); 17 C.F.R. § 240.21F-2(a)(1).

As set forth at pp. 2, *supra.*, Plaintiff has now had seven opportunities to articulate a legally viable theory for his claims against the IAFF-FC; there is absolutely no basis in law or fact to give him an eighth bite at this apple. *Accord Nikitine v. Wilmington Trust Co.*, 715 F.3d 388, 390 (1st Cir. 2013) ("a district court may deny leave to amend when the request is characterized by undue delay, bad faith, futility, or the absence of due diligence on the movant's

---

[7] On October 18, 2023, the IAFF-FC served a Rule 34 document request for "records reflecting Plaintiff's telephone communications with employees of the Securities and Exchange Commission that purportedly took place in January 2023." Nearly six months later, Plaintiff has not produced a single piece of paper in response.

13

part") (citing *Aponte-Torres v. Univ. of P. R.*, 445 F.3d 50, 58 (1st Cir. 2006); *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006)) (internal quotation marks omitted).

## CONCLUSION

For the reasons set forth herein, the Court should adopt the Report and Recommendation's conclusions concerning Plaintiff's Dodd-Frank and wrongful termination claims and dismiss those claims with prejudice.

Respectfully submitted,
 */s/ William Kettlewell*
William H. Kettlewell (BBO # 270320)
Sara E. Silva (BBO # 645293)
SILVA, KETTLEWELL & PIGNATELLI LLP
10 High Street, Suite 505
Boston, MA 02110
(617) 351-9091
bill.kettlewell@skpboston.com
sara.silva@skpboston.com

*Counsel for Defendant IAFF Financial Corporation*

Dated: March 26, 2024

## CERTIFICATE OF SERVICE

I certify that this document filed through the CM/ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

 */s/ William Kettlewell*
William H. Kettlewell (BBO # 270320)