UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN F. HUGHES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 23-CV-10361-AK |
| | ) |
| BAYSTATE FINANCIAL SERVICES, LLC.,) IAFF FINANCIAL CORPORATION, KURT M. BECKER, DAVID C. PORTER | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER ON REPORT AND RECOMMENDATION ON IAFF FINANCIAL CORPORATION'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

**ANGEL KELLEY, D.J.**

Plaintiff John F. Hughes brings this action related to his treatment and termination as the now former, Director of Investment and Finance for Defendant IAFF Financial Corporation ("IAFF-FC"). Hughes' original Complaint alleges five counts, including, Count I, Tortious Interference with Advantageous Employment Relations against Defendants Baystate Financial Services, LLC ("Baystate") and David C. Porter ("Porter"); Count II, Defamation against Defendants Baystate and Porter; Count III, Tortious Interference with Advantageous Employment Relations against Defendant Becker;[1] Count IV, Wrongful Termination in Violation of Public Policy against Defendant IAFF-FC; and Count V, Violation of the Dodd-Frank Act against Defendant IAFF-FC. [Dkt. 1].

---

[1] On May 10, 2023, Hughes voluntarily dismissed Defendant Becker from this action. [See Dkt. 24].

Defendant IAFF-FC moved to dismiss two claims against it: Wrongful Termination and Violation of the Dodd-Frank Act. [Dkt. 26]. Defendants Baystate and Porter answered the Complaint brought a Counterclaim for Defamation and Libel and Chapter 93A Violations of the Massachusetts General Law. [See Dkts. 4, 4-1]. Hughes then filed a Motion for Leave to Amend his Complaint seeking to bolster the factual allegations and add four additional state claims against IAFF-FC. [Dkt. 31]. IAFF-FC opposed the Motion to Amend, but only with respect to the wrongful termination and Dodd-Frank claims. [Dkt. 37].

On March 5, 2024, the Magistrate Judge issued a Report and Recommendation [70] allowing Defendant IAFF Financial Corporation's Motion to Dismiss, and allowing in part and denying in part, Plaintiff John Hughes' Motion to Amend the Complaint to add additional state law claims against IAFF-FC. Having carefully considered Hughes' Objection to the Magistrate's Report and Recommendation [75]; IAFF-FC's Objection to the Report and Recommendation [76]; IAFF-FC's and Hughes' Replies [78, 79], all underlying pleadings and the Complaint, and the Magistrate Judge's Order including her Report and Recommendation, the Court accepts and adopts, in part, and declines to accept and adopt, in part, the Report and Recommendation.[2] For the reasons stated below, IAFF-FC's Motion to Dismiss [Dkt. 26] is **GRANTED IN PART** and **DENIED IN PART**, and Hughes' Motion to Amend Complaint [Dkt. 31] is **GRANTED IN PART** and **DENIED IN PART.**

---

[2] On March 26, 2024, seven days after the deadline for objections to the Report and Recommendation, Baystate filed a "Response" to the Report and Recommendation, which was in essence an objection and motion to dismiss by everything but name. [Dkt. 77]. Baystate failed to meet the deadline for objections to the Report and Recommendation, and it made untimely arguments for the first time to dismiss the claims against it. [Id.]. Neither the Magistrate, nor Hughes have had the opportunity to review and respond to these arguments. Accordingly, the Court **DENIES** all requests within the Response concerning the claims against it, first, because Baystate failed to properly move to dismiss or oppose the amended claims against it, and second, failed to timely object to the Report and Recommendation. See Fed. R. Civ. P. 72(b)(3); [see also Dkts. 70, 74].

I.    BACKGROUND

The following summary is based upon allegations in Hughes' complaint and proposed amended complaint, which are accepted as true as the Court considers the motions to dismiss and for leave to amend the complaint. See Doe v. Town of Wayland, 179 F. Supp. 3d 155, 163 (D. Mass. 2016). Additionally, the Court considers an email submitted by Defendant IAFF-FC as Exhibit A to its memorandum in support of its motion to dismiss [Dkt. 27-1], a document which has been "sufficiently referred to in the complaint" and whose authenticity is not in dispute. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); [see Dkt. 1 at ¶¶ 46, 76]. The following background is limited to the relevant facts to resolve this narrow issue. The Court incorporates all other facts established by the Report and Recommendation.

A.    **Hughes Reports Concerns Internally**

In August of 2021, Defendant IAFF-FC, a financial corporation responsible for providing investment services to members of the International Association of Fire Fighters ("IAFF"), hired John F. Hughes, an experienced, licensed "financial consultant and advisor," as its Director of Investment and Finance. [Dkt. 1 at ¶¶ 1, 11-12, 22]. Prior to his employment, Hughes was in communication with IAFF-FC and had shared his visions of establishing the IAFF-FC as a "financial broker-dealer" in order to expand the financial services, products, and investment options available to the IAFF membership. [Id. ¶¶ 15-19, 21]. Kurt Becker, an individual hired by IAFF-FC as its Chief Operating Officer in June of 2021, presented this vision to the IAFF-FC's Board of Directors (the "Board") and suggested that they hire Hughes to assist IAFF-FC make such a transition. [Id. ¶¶ 20-22].

As part of his efforts to establish IAFF-FC as a broker-dealer, Hughes, in September of 2021, engaged Baystate to gauge its potential interest in providing "financial planning and

3

wealth management" services to the IAFF's membership.  [Id. ¶ 25].  In particular, these discussions centered around the use of certain "model portfolios" intended to increase the investment options available for IAFF members.  [Id. ¶ 26].  Hughes also had similar discussions with two other investment firms, Natixis and Franklin Templeton.  [Id. ¶ 27].  Throughout the fall of 2021, Hughes prepared the required broker-dealer registration and registered investment advisor applications for review and approval by the Securities and Exchange Commission ("SEC"), and he created three subsidiary companies—IAFF-FC Investments, LLC; IAFF-FC Insurance Agency, LLC; and IAFF-FC Advisors, LLC—to that end.  [Id.].  At an IAFF-FC Board meeting held on February 18-19, 2022, the Board approved the "branded model portfolios" presented by Natixis and Franklin Templeton and authorized the IAFF-FC to "negotiate master services agreements" with each.  [Id. ¶ 29].

Following the Board's decision to pursue relationships with Natixis and Franklin Templeton, Becker insisted that Hughes inform each firm of its need "to pay $250,000.00 up front to the IAFF-FC for the opportunity to do business with [it]."  [Id. ¶ 31].  When both firms "baulked" at Becker's "pay to play" requirement due to ethical concerns—as Hughes "had forewarned"—Becker decided to place the model portfolio project on hold "indefinitely."  [Id. ¶ 32].  Hughes insisted that the portfolios were "in the best interest of the Membership," however, his advocacy was not well received.  [Id. at ¶ 33].  Instead, because Natixis and Franklin Templeton declined to "pay to play" Becker insisted that Hughes discuss with Baystate the possibility of receiving "kickbacks" from Baystate, while IAFF-FC's registered investment advisor application was pending with the SEC.  [Id. at ¶ 36].  Hughes believed this to be a "work around" that was "against state securities law" and a "red flag" for the SEC.  [Id.].  He also believed such practices put his "personal licenses at risk" and advised Becker that IAFF-FC

4

await SEC approval of the application before accepting any payments. [Id.]. Nevertheless, on May 27, 2022, Baystate confirmed that it "was in fact willing to make kickback payments" to IAFF-FC while it awaited SEC approval, and that, while Baystate "could not legally make the payments" until the investment advisor application was approved, it would "simply falsely characterize the fees as 'convention or marketing fees'" and "essentially pay the fees under the table." [Id. ¶ 37].

### B. Internally SEC Complaint and Retaliation

On May 31, 2022, Hughes met with Becker, IAFF-FC Board member Jay Colbert, and IAFF President Edward Kelly ("Kelly") at Kelly's office in Washington, D.C. and discussed, among other things, the "proposed kickbacks" to be arranged with Baystate. [Id. ¶¶ 38-39]. Hughes again stressed his ethical concerns and the potential consequences to the organization and IAFF's membership, and he further stated that he would be "required to report" the arrangement to the SEC if it were to go forward. [Id.]. As a result of Hughes' objections, he was placed on a "performance improvement plan," and "presented with a 'Conflict of Interest' policy," required to "continue to negotiate a side deal" with Baystate and saw his job duties and responsibilities reduced. [Id. ¶¶ 40-41].

In December of 2022, Hughes again voiced his concerns to Becker regarding the investment advisor application that contained "gross misrepresentations" and urged to seek alternatives to receive application approval. [Id. ¶ at 44]. Despite his opposition, Hughes felt there was little more he could do and "felt compelled" to report his concerns to the SEC. [Id. ¶ at 46].

On January 12, 2023, Becker informed Hughes that his "ethical considerations were roadblocks that were causing Baystate considerable frustration" and that Baystate was strongly

5

urging IAFF-FC to terminate his employment. [Id. ¶ 45]. Aware of Baystate's mounting frustration and Baystate and IAFF-FC's resistance to follow "ethical and legal requirements" applicable to the process, Hughes felt "compelled to bring his concerns" to the SEC's attention. [Id. ¶ 46]. On January 17, 2023, following a phone call with Jack Hogan of the SEC, Hughes followed up with an email, which forms the basis of Hughes' whistleblower and retaliation claims. [Dkts. 1 at ¶ 46; 27-1, Ex. A]. That email references an application previously submitted by IAFF-FC Advisors, LLC, one of the IAFF-FC subsidiaries created by Hughes, and states in its entirety:

> Dear Mr. Hogan:
> Thank you for taking the time to speak with me concerning the above captioned matter the other day. As we discussed, I am the manager and Series 65 license holder for IAFF-FC Advisors, LLC ("FC Advisors"). Unfortunately, at this juncture, I am required to report that I have serious ethical concerns related to FC Advisors' application, business plan and proposed operations. Would you have any availability to discuss these concerns with me? Thank you. Jack Hughes.

[Dkt. 27-1, Ex. A].

The next day, on January 18, 2023, Hughes met with Becker and Kelly at Kelly's Washington, D.C. office. [Dkt. 1 at ¶ 47]. There, Kelly informed Hughes that as a result of his "complaints," things had not been "working out" and IAFF-FC would be terminating his employment effective "as of the end of April 2023." [Id.]. Hughes was then presented a severance agreement with payments "conditioned" upon his agreement not to communicate with the IAFF membership—a condition Hughes refused due to his "ethical and fiduciary duty to the Membership." [Id. ¶ 48]. After Hughes refused to sign the agreement, that was "geared to ensur[e] his silence," IAFF-FC terminated Hughes' employment effective January 24, 2023,

6

without severance payments or health insurance benefits. [Id. ¶¶ 48-49]. Hughes filed the instant action on February 17, 2023. [See Dkt. 1].

### C. Proposed Relevant Facts in Amended Complaint

Hughes' Amended Complaint seeks to add facts regarding the application process and communication with the SEC, among other allegations that will not be discussed here. In August of 2022, the SEC's Kevin Hogan, issued a letter to the compliance officer for the proposed investment advisory firm, Leonard Barenboim, stating that the advisor was likely "not eligible to be registered under the multi-state advisor registration exemption" and requested clarification regarding "how the IAFF-FC Advisors, LLC meets the definition of an investment advisor under Section 202 of the Investment Advisors Act of 1940." [Dkt. 31 ¶ 40]. Additionally, given the information the SEC had, it determined that the IAFF-FC Advisors may not provide investment advice as proposed. [Id.]. "Infuriated" by the SEC's letter, Becker limited Hughes' involvement with efforts to obtain SEC approval for the investment advisory firm and transferred Hughes' responsibilities to an attorney, Peter McLeod. [Id. at 42]. McLeod then prepared a response to Hogan with what Hughes perceived to be false representations of the services the advisory firm would actually provide to meet the definition of an "investment advisor" under the Advisor Act. [Id. at 43].

Hughes protested submitting the proposed letter to the SEC. [Id. at 44]. Becker and IAFF President Edward Kelly's representative, Bernie Winne, responded with attempts to "coerce" Hughes to support the letter, and threatened his job if he continued to resist. [Id.]. Hughes resorted to contacting the SEC, via telephone[3] and the email sent on January 17, 2023, detailed above.

---

[3] Since the filing of the pending motions, parties have engaged in discovery that has led to testimony concerning further details of Hughes' communication with the SEC over the phone, leading up to his written correspondence.

## II.  LEGAL STANDARD

Pursuant to 28 U.S.C. § 636(b)(1)(C), the district court reviews the Magistrate's report and recommendations for dispositive motions, de novo. United States v. Dynamics Rsch. Corp., 441 F. Supp. 2d 259, 263 (D. Mass. 2006). "The court may accept, reject[,] or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Ouellette v. Union Tank Car Co., 902 F. Supp. 5, 8 (D. Mass. 1995) (citing Paterson–Leitch v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990–991 (1st Cir.1988)); see 28 U.S.C. § 636(b)(1)(B).

Courts may simultaneously decide a motion to dismiss and a motion to amend. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," the court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. Id. Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id. A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Second, the court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678). Dismissal is appropriate when the complaint fails to "allege a plausible entitlement to relief."

---

[See Dkt. 75 at 14 n. 9]. The call is also referenced in the actual email to Hogan sent on January 17, 2023. [Dkt. 27-1, Ex. A].

8

Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. 544 at 559).

### III. DISCUSSION

In sum, Hughes' Objection to the Report and Recommendation on IAFF-FC's Motion to Dismiss and Plaintiff's Motion to Amend argues four main points: 1) the Magistrate "ignored" material facts; 2) wrongfully dismissed the Dodd-Frank claim; 3) wrongfully dismissed the wrongful termination claim; and 4) erroneously denied Hughes's request to amend his complaint to revise and include the wrongful termination and Dodd-Frank claims. [Dkt. 75 at 2-4]. Separately, IAFF-FC objects to the Magistrates' finding that the Court maintains subject matter jurisdiction, even after the dismissal of the sole federal (Dodd-Frank) claim. [Dkt. 76 at 2]. Additionally, IAFF-FC makes an untimely argument for the dismissal of the proposed amended complaint's newly added state claims—which it failed to do in its motion to oppose the amendment and therefore waived.

All but one of the parties' challenges to the Report and Recommendation are without merit. The Court departs from the Magistrate's Order on one narrow issue, as to whether Hughes' whistleblower claim should survive.

#### A. Dodd-Frank Retaliation

Hughes has sought protection under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), for what he alleges to be protected activity as a whistleblower. The sole issue here is whether Hughes qualifies as a whistleblower within the meaning of Dodd-Frank.

Dodd-Frank provides protection from retaliation for "any individual who provides . . . information relating to a violation of the securities laws to the [Securities and Exchange]

Commission, in a manner established, by rule or regulation, by the Commission." Digital Realty Tr., Inc. v. Somers, 583 U.S. 149, 155 (2018). "The 'core objective' of Dodd-Frank's robust whistleblower program . . . is to motivate people who know of securities law violations to tell the SEC.'" Marciniszyn v. PerkinElmer Inc., No. 3:18-CV-494(AWT), 2018 WL 8729590, at *8 (D. Conn. Mar. 27, 2018) (quoting Digital Realty Trust, Inc. v. Somers, 138 S. Ct. 767, 777 (2018) (alteration in the original)). Section 78u-6(h) of the Act, limits anti-retaliation protections to whistleblowers who have engaged in the activities defined by Section 78u-6. However, Dodd-Frank nor the First Circuit have further defined the scope of the information that must be provided to the Commission to be considered a whistleblower. Various courts within the Second Circuit have explored this area and have established that a "plaintiff is not required to prove that a securities law violation had occurred, but only that he possessed a good faith reasonable belief that such a violation had occurred." McManus v. Tetra Tech Constr., Inc., 260 F. Supp. 3d 197, 210 (N.D.N.Y. 2017) (quoting Williams v. Rosenblatt Sec. Inc., 136 F. Supp. 3d 593, 605 (S.D.N.Y. 2015)).

While far from uniform, courts within the Second and Third Circuits have added additional reporting requirements to the SEC to be considered a whistleblower. See e.g., Cellucci v. O'Leary, No. 19-CV-2752, 2020 WL 977986, at *10 (S.D.N.Y. Feb. 28, 2020) (rejecting whistleblower allegations "wholly untethered from the elements of any particular violation " that failed to identify "a specific provision or section that may have been violated."); Alijaj v. Wells Fargo, No. 17-CV-1887, 2022 WL 392864, at *7 (S.D.N.Y. Feb. 9, 2022) (holding plaintiff "must allege that a law or rule in the SEC's jurisdiction explicitly requires or protects disclosure of that violation") (quoting Egan v. TradingScreen, Inc., No. 10 CIV. 8202, 2011 WL 1672066, at *6 (S.D.N.Y. May 4, 2011))); Moniodes v. Autonomy Cap. (Jersey) LP,

No. 1:20-CV-5648, 2021 WL 3605385, at *9 (S.D.N.Y. Aug. 11, 2021) (finding that plaintiff failed to allege he was a whistleblower under Dodd-Frank because the complaint alleged that plaintiff provided information to the SEC by telephone rather than one of the Rule 21F–9 methods).

At issue here is whether the written correspondence from Hughes to SEC representative, Kevin Hogan, is sufficient to classify Hughes as a whistleblower, according to Dodd-Frank.  The email references a conversation that occurred between Hughes and Hogan on a prior date, his licensed position, and the statement that he is "required to report that [he has] seriously ethical concerns related to FC Advisors' application, business plan and proposed operations."  The message closes with a request to discuss his "concerns" further.  While the written correspondence did not include a specific provision that may have been violated, the Court disagrees with the conclusion that Hughes' claim was "wholly untethered" to a specific violation. The written correspondence was sent following a phone call regarding an FC Advisors' application. The recipient, Hogan, had previously issued a letter indicating IAFF-FC's application had failed to meet the requirements, and the application was directly tied to various security law.  Due to the pending application, there was also a preexisting relationship between the SEC (Hogan) and the IAFF-FC, concerning the application at issue, in conjunction with phone conversations between Hughes and Hogan to tether the brief, written report of a suspected violation.

Whether Hughes used the specific term "violation" in his written correspondence with Hogan is immaterial.  Hughes' actions—reporting his concerns regarding potential violations internally, in conjunction with the written correspondence and the phone conversations— demonstrate that Hughes "possessed a good faith reasonable belief that such a violation had

11

occurred." McManus, 260 F. Supp. 3d at 210 (quoting Williams, 136 F. Supp. 3d at 605); see Williams, 136 F. Supp. 3d at 603 (finding reasonable belief where whistleblower published a report stating, "no securities laws were broken," with suggestions that violations occurred).

A focus on the overall purpose demonstrated in the written correspondence rather than the diction in the written report, is in line with the core objective of the Dodd-Frank to encourage whistleblowers to come forward. The remaining elements required to meet a prima facie retaliation action under Dodd-Frank are satisfied by the alleged facts of the proposed amended complaint.

### B.  Untimely Arguments to Dismiss State Claims

For the first time, IAFF-FC and Hughes argue to dismiss the state claims against them in their respective Objection and Response. This fails to meet the practice for objections to a report and recommendation. See Borden v. Sec'y of Health & Hum. Servs., 836 F.2d 4, 6 (1st Cir. 1987) (objecting party "was not entitled to a de novo review of an argument never raised," which would "defeat th[e] purpose [of the Federal Magistrate's Act] if the district court was required to hear matters anew on issues never presented to the magistrate." (internal citations omitted)). "Parties must take before the magistrate, not only their 'best shot' but all of their shots." Id. (internal quotation omitted) (quoting Singh v. Superintending Sch. Comm. of City of Portland, 593 F. Supp. 1315, 1318 (D. Me. 1984)). Accordingly, for clarity, all state claims against IAFF-FC and Hughes remain.

### IV.  CONCLUSION

For the foregoing reasons, IAFF-FC's Motion to Dismiss [Dkt. 26] is **GRANTED IN PART** and **DENIED IN PART**, and Hughes' Motion to Amend Complaint [Dkt. 31] is **GRANTED IN PART** and **DENIED IN PART**. Hughes' Wrongful Termination claim is

**DISMISSED**.  Hughes may amend his complaint with exception of the Wrongful Termination claim no later than April 12, 2024.

      **SO ORDERED.**

Dated: March 31, 2024                                        /s/ Angel Kelley
                                                                                                  Hon. Angel Kelley
                                                                                                  United States District Judge