**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOHN F. HUGHES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civil Action No. 23-CV-10361-AK |
| v. | ) |
| | ) |
| BAYSTATE FINANCIAL SERVICES, LLC, | ) |
| IAFF FINANCIAL CORPORATION, | ) |
| and DAVID C. PORTER, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM AND ORDER ON
## IAFF-FC, BAYSTATE, AND PORTER'S MOTIONS TO DISMISS

**ANGEL KELLEY, D.J.**

Plaintiff John F. Hughes ("Hughes") filed this suit against IAFF Financial Corporation ("IAFF-FC"), Baystate Financial Services, LLC ("Baystate"), and David C. Porter ("Porter"), the owner and Managing Partner of Baystate. Hughes alleges statutory and common law claims against IAFF-FC for (1) violating the Dodd–Frank Wall Street Reform and Consumer Protection Act ("Dodd–Frank"), (2) intentional or negligent misrepresentation, (3) promissory estoppel, (4) failure to timely pay wages, and (5) unjust enrichment. [Dkt. 89 at 24-29]. Hughes alleges two common law claims against Baystate and Porter (the "Baystate Defendants") for (1) tortious interference with advantageous employment relations and (2) defamation. [Dkt. 89 at 23-24]. IAFF-FC moves to dismiss the Dodd–Frank claim, while the Baystate Defendants move to dismiss both the tortious interference and defamation claims. [Dkts. 90, 92]. For the following reasons, both IAFF-FC's Motion to Dismiss [Dkt. 90] and the Baystate Defendants' Motion to Dismiss [Dkt. 92] are **DENIED**.

## I.     PROCEDURAL BACKGROUND

Hughes brought this action in February 2023.  [Dkt. 1].  The Baystate Defendants filed an Answer and Counterclaims.  [Dkt. 4].  Conversely, IAFF-FC filed a Motion to Dismiss Hughes' initial complaint for failure to satisfy the statutory definition of a "whistleblower" under Dodd–Frank.  [Dkt. 26].  In June 2023, Hughes moved to amend his Complaint.  [Dkt. 31].  A hearing on IAFF-FC's Motion to Dismiss and Hughes' Motion to Amend was held before Magistrate Judge Dein on November 17, 2023.

After the proceedings, Magistrate Judge Dein issued a Report & Recommendation ("R&R") on March 5, 2024, recommending that IAFF-FC's Motion to Dismiss be granted and Hughes' Motion to Amend be allowed in part and denied in part.  [Dkt. 70].  On March 19, 2024, Hughes filed objections to both recommendations in the R&R.  [Dkt. 75].  On the same day, IAFF-FC filed objections concerning Hughes' Motion to Amend.  [Dkt. 76].  On March 26, 2024, Hughes and IAFF-FC filed replies to the objections [Dkts. 78, 79], while on the same day, Baystate filed a response to the R&R in support of IAFF-FC's objections, while also arguing for dismissal of the claims against Baystate for the first time.  [Dkt. 77 at 2].

On March 31, 2024, this Court issued a Memorandum and Order ("Order") adopting the R&R in part.  [Dkt. 84].  In its Order, the Court denied Baystate's requests because the Baystate Defendants failed to properly move to dismiss the claims against them and because they failed to timely object to the R&R.  [Id. at 2 n.2].  The Order departed from the R&R only on the issue of whether Hughes' whistleblower claim should survive, concluding that Hughes qualifies as a whistleblower as defined by Dodd–Frank.  The Order followed Magistrate Judge Dein's recommendation as to Hughes' Motion to Amend, granting in part and denying in part.  [Id. at 9-12].  Hughes filed his Amended Complaint in April 2024, which added new allegations

pertaining to Dodd–Frank and four new state law claims against IAFF-FC.  [Dkt. 89].  The Amended Complaint did not alter the claims against the Baystate Defendants.  Id.

In April 2024, IAFF-FC filed a Motion to Dismiss the Amended Complaint, putting forth the same arguments as its May 2023 Motion to Dismiss.  [Dkt. 91].  This time, the Baystate Defendants also filed a Motion to Dismiss the Amended Complaint for failure to state a claim. [Dkt. 92].

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Reading the complaint "as a whole," the court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements.  Id.  Factual allegations must be accepted as true, while legal conclusions are not entitled to credit.  Id.  A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable.  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  Second, the court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief."  Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. 544 at 559).

III.    DISCUSSION

A.  IAFF-FC's Motion to Dismiss

Hughes alleges that he was fired in retaliation for reporting IAFF-FC's actions to the Securities and Exchange Commission ("SEC" and "Commission") in violation of 15 U.S.C. § 78u-6(h)(1)(A) of Dodd–Frank.  IAFF-FC argues the count should be dismissed, as Hughes does not qualify as a whistleblower as defined by Dodd–Frank and the operative regulation, 17 C.F.R. § 240.21F-2(a)(1).  At this stage of the proceeding, when the Court must accept all factual allegations as true, it is plausible that Hughes qualifies as a whistleblower.  The Motion to Dismiss is **DENIED**.

As an initial matter, Hughes argues that IAFF-FC's Motion to Dismiss should be re-characterized as a motion for reconsideration in light of the prior R&R and Order.  However, this Court agrees with IAFF-FC in whole.  "Under Federal Rule of Civil Procedure 15(a)(3), the IAFF-FC was required to respond to [Hughes'] amended complaint . . . and, under Federal Rule of Civil Procedure 12(b)(6), the IAFF-FC was permitted to respond by filing a motion to dismiss on the ground that the Amended Complaint failed to state a claim upon which relief could be granted.  See Fed. R. Civ. P. 12(b)(6), 15(a)(3).  That is exactly what the IAFF-FC did with regard to the Dodd–Frank Act claim."  [Dkt. 96 at 2].  As a result, this Court appropriately considers IAFF-FC's Motion to Dismiss as such.

There is no question that this is a close call, even considering the lower pleading standard at the motion to dismiss stage.  According to Dodd–Frank, "[n]o employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower . . . in providing information to the Commission in accordance with

4

this section." 15 U.S.C. § 78u-6(h)(1)(A)(i).  To qualify for Dodd–Frank's protections, the

petitioner must fall within the definition of a whistleblower.  The SEC has defined whistleblower

for purposes of Dodd–Frank as the following: "You are a whistleblower . . . as of the time

that . . . you provide the Commission with information *in writing* that relates to a possible

violation of the federal securities laws (including any law, rule, or regulation subject to the

jurisdiction of the Commission) that has occurred, is ongoing, or is about to occur."  17 C.F.R. §

240.21F-2(a)(1) (emphasis added).  In dispute here is whether Hughes' January 17, 2023 email

was a sufficient writing to bring him within the definition of a whistleblower.

  As laid out in this Court's March 31, 2024 Order, neither "Dodd–Frank nor the First

Circuit have further defined the scope of the information that must be provided to the

Commission to be considered a whistleblower.  Various courts within the Second Circuit have

explored this area."  [Dkt. 84 at 10].  Many of the cases that have assessed this question hold that

"[t]o state a claim under Dodd–Frank, a plaintiff must plausibly allege that he had an objectively

reasonable belief that the defendant's conduct violated one of the enumerated provisions of law."

Lawrence v. Int'l Bus. Mach. Corp., 12-CV-8433-DLC, 2017 WL 3278917, at *10 (S.D.N.Y.

Aug. 1, 2017) (citing Nielsen v. AECOM Tech. Corp., 762 F.3d 214, 222 (2d Cir. 2014)).  To this

point, this Court wrote in its Order:

> The email references a conversation that occurred between Hughes and Hogan on
> a prior date, his licensed position, and the statement that he is "required to report
> that [he has] serious[] ethical concerns related to FC Advisors' application,
> business plan and proposed operations."  The message closes with a request to
> discuss his "concerns" further.  While the written correspondence did not include
> a specific provision that may have been violated, the Court disagrees with the
> conclusion that Hughes' claim was "wholly untethered" to a specific violation.
> The written correspondence was sent following a phone call regarding an FC
> Advisors' application. The recipient, Hogan, had previously issued a letter
> indicating IAFF-FC's application had failed to meet the requirements, and the
> application was directly tied to various security law.  Due to the pending
> application, there was also a preexisting relationship between the SEC (Hogan)

and the IAFF-FC, concerning the application at issue, in conjunction with phone conversations between Hughes and Hogan to tether the brief, written report of a suspected violation.  Whether Hughes used the specific term "violation" in his written correspondence with Hogan is immaterial.  Hughes' actions—reporting his concerns regarding potential violations internally, in conjunction with the written correspondence and the phone conversations—demonstrate that Hughes "possessed a good faith reasonable belief that such a violation had occurred."

[Dkt. 84 at 11-12] (citations omitted).  Again, IAFF-FC questions the sufficiency of the email to establish whistleblower protections.

In its Motion to Dismiss, IAFF-FC argues that since the Supreme Court decision in Digital Realty, courts "have strictly applied the statutory definition of a 'whistleblower' to Dodd–Frank claims [and] . . . have [] applied Digital Realty to strictly construe the type of information that people must report to the SEC to qualify 'whistleblowers.'"  [Dkt. 91 at 7].  IAFF-FC then cites to a series of cases in an effort to support this proposition; however, IAFF-FC improperly extends the holding of Digital Realty while ignoring important differences in cases that have considered the *type* of information that must be reported to the SEC.

The Court in Digital Realty made clear: "The question presented [is]: Does the anti-retaliation provision of Dodd–Frank extend to an individual who has not reported a violation of the securities laws to the SEC and therefore falls outside the Act's definition of 'whistleblower'?"  Digital Realty Tr., Inc. v. Somers, 583 U.S. 149, 153 (2018) (citations omitted).  Time and again, the Court in Digital Realty articulated that the question before the Court was if the report had to be made to the SEC.  Digital Realty, 583 U.S. at 160-61 ("A 'whistleblower' is 'any individual who provides . . . information relating to a violation of the securities laws *to the Commission*.'" (emphasis in original)); id. ("The definition first describes *who* is eligible for protection—namely, a whistleblower who provides pertinent information 'to

the Commission.'"); id. ("Courts are not at liberty to dispense with the condition—tell the SEC—Congress imposed.").

IAFF-FC attempts to paper over this difference, arguing "the only difference between this case and Digital Realty is that, there, the Supreme Court addressed the question of who needs to receive 'the pertinent information' (the Commission vs an employer) in order for an individual to qualify as a 'whistleblower,' whereas this case involves the type of 'pertinent information' the individual must provide. But in both cases, the legal analysis is exactly the same and turns on the plain language of the statute." [Dkt. 91 at 11]. Claiming the legal analysis is the same fails to grapple with the complexities of assessing the type of information that must be communicated, as opposed to whom that information must be communicated to. First, as described above, Digital Realty plainly only addresses to whom reports must be sent. There is no alternative analysis. Second, the type of information that must be provided is not nearly as clear as IAFF-FC might hope. Not only have courts disagreed about the necessary contents of the writing, but there has been no discussion of preceding oral conversations based on a pre-existing relationship and submitted application, which are then memorialized, albeit briefly, in a written report.

IAFF-FC cites to several cases, most notably Cellucci in the Southern District of New York and Pickholz in the District of New Jersey to argue that in applying Digital Realty, courts have required a would-be whistleblower to identify the specific provisions or sections that have been violated. [Id. at 12]. Those two cases differ from the instant case in a crucial way, especially given that the Court's consideration is limited to information within four corners of the Amend Complaint when addressing a motion to dismiss. While it is true that both courts highlighted that the plaintiffs failed to sufficiently identify a specific statute or provision, neither operative complaint in those cases actually included the writing on which the purported

whistleblower's protection relied. Therefore, the court in <u>Cellucci</u> had "no way to assess whether he was complaining of conduct that is even arguably within the scope of the Dodd–Frank whistleblower provision and no way to assess whether [the plaintiff] could have had a reasonable belief that the reported conduct was unlawful." <u>Cellucci v. O'Leary</u>, 19-CV-2752-VEC, 2020 WL 977986, at *10 (S.D.N.Y. Feb. 28, 2020). Similarly, in <u>Pickholz</u>, "though Plaintiff alleges that he 'made formal written submissions to the [SEC] about the Defendants' unlawful conduct,' Plaintiff does not allege what conduct he provided to the SEC." <u>Pickholz v. TransparentBusiness, Inc.</u>, 22-CV-2504-ES-JBC, 2024 WL 489543, at *6 (D.N.J. Feb. 8, 2024). In short, in neither case did the court have the benefit of reviewing the writing submitted to the SEC, which proved fatal to both cases.

Returning to the case at hand, there is little question that the email sent by Hughes could have been more specific and provided additional information related to IAFF-FC's alleged conduct; however, there is nothing in the statute or regulation that prevents the Court from considering the context in which this email was sent. According to the Amended Complaint, there was a pre-existing relationship, the email was specifically in reference to the application submitted on behalf of IAFF-FC, and there had clearly been prior phone calls. Thus, at this stage of the proceedings, accepting all allegations as true, the writing plausibly highlights sufficient conduct that "approximate[s] specific elements" of IAFF-FC fraud—providing false or misleading information to the SEC—which would certainly be a violation of securities law. <u>Lawrence</u>, 2017 WL 3278917, at *10.

On a final note, IAFF-FC requests that, should this Court deny its Motion to Dismiss, that the issue be certified to the First Circuit for interlocutory appeal. The First Circuit has emphasized that certification "should be used sparingly and 'only in exceptional cases where an

intermediate appeal may avoid protracted or expensive litigation.'" In re Heddendorf, 263 F.2d 887, 888 (1st Cir. 1959) (citing Milbert v. Bison Laboratories, Inc., 260 F.2d 431, 433 (3rd Cir. 1958). "As a general rule, [the First Circuit does] not grant interlocutory appeals from a denial of a motion to dismiss." Caraballo-Seda v. Municipality of Hormigueros, 395 F.3d 7, 9 (1st Cir. 2005) (citing McGillicuddy v. Clements, 746 F.2d 76, 76 n.1 (1st Cir. 1984) ("We wish to point out that we would not normally allow an appeal from a denial of a motion to dismiss, and, with the benefit of hindsight, we admit our error in doing so in this case.")). This Court sees no reason to deviate from this general rule in the instant case. Although it is a question of law without controlling authority, an immediate appeal would not avoid protracted or expensive litigation. Instead, the instant case is set for trial within the year, with dispositive motions due before the end of the calendar year. Certifying the question would only result in unnecessary delay in the instant case.

As a result, IAFF-FC's Motion to Dismiss is **DENIED** and all five claims against IAFF-FC survive.

### B.  Baystate and Porter's Motion to Dismiss

Hughes brings two claims against Porter and Baystate, alleging defamation and tortious interference. In their Motion to Dismiss, the Baystate Defendants argue that the alleged statements, if defamatory, are protected by conditional privilege, and, as to the tortious interference claim, argue that the Amended Complaint failed to state a "breach of the plaintiff's 'at will' employment relationship or that Defendants 'caused or induced' any such breach." [Dkt. 93 at 10-16]. Baystate and Porter further argues that Hughes has failed to adequately

allege that the Baystate Defendants acted out of "improper motives" or employed "improper means." [Dkt. 93 at 10].

Hughes has presented sufficient facts to support his claims for defamation and tortious interference, thus, the Baystate Defendant's Motion to Dismiss is **DENIED**.

### A. Defamation

Under Massachusetts law,[1] a plaintiff alleging defamation must establish that the defendant published "a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss." Zeigler v. Rater, 939 F.3d 385, 392 (1st Cir. 2019) (quoting White v. Blue Cross & Blue Shield of Mass., Inc., 442 Mass. 64, 66 (2004)) (internal quotation marks omitted). The statement "must be one of fact rather than of opinion." Salmon v. Lang, 57 F.4th 296, 320 (1st Cir. 2022) (quoting Scholz v. Delp, 473 Mass. 242, 249 (2015)); see also King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987) ("Statements of pure opinion are constitutionally protected."). In evaluating whether a statement is one of fact or opinion, the court must examine the statement "in its totality in the context in which it was uttered or published . . . [and] consider all the words used, not merely a particular phrase or sentence." Cole v. Westinghouse Broad. Co., 386 Mass. 303, 309 (1982).

Hughes has pleaded adequate facts to support a plausible defamation claim. The Amended Complaint alleges that Porter and Baystate made statements to Kurt Becker, Hughes' boss at IAFF-FC, falsely representing that Hughes was "incompetent," "needed to be removed," and, most importantly, was "receiving bribes from Franklin Templeton and Natixis." [Dkt. 89 at

---

[1] The Baystate Defendants spend considerable time discussing the applicability of Massachusetts law. As Hughes concedes this point for the purposes of the Motion to Dismiss, the Court will apply Massachusetts law.

¶ 37].  Such claims fall squarely within the range of actionable statements of fact.  See R.I. Seekonk Holdings, LLC v. Hines, 425 F. Supp. 3d 37, 47 (D. Mass. 2019) (finding defendant's accusation at a town meeting that plaintiffs offered a bribe to residents of apartments they owned to be actionable for defamation.).  Additionally, statements that "harm a plaintiff's professional or business reputation are actionable without proof of economic loss."  White v. Blue Cross & Blue Shield of Massachusetts, Inc., 442 Mass. 64, 69 n.10 (2004); Restatement (Second) of Torts § 573 (1977) ("One who publishes a slander that ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession . . . is subject to liability without proof of special harm.").  The Baystate Defendants' representation that Hughes, a professional financial advisor, was engaging in unethical conduct such as bribery implies a breach of his fiduciary duty, harms his reputation, and jeopardizes his professional licenses.  Taken together, the statements attributed to Porter and Baystate are plausibly defamatory.

### i.  Conditional Privilege

In Massachusetts, a conditional common law privilege immunizes otherwise defamatory statements "where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it."  Zeigler, 939 F.3d at 392-93.  A "variant of this conditional privilege arises when the challenged publication 'is reasonably necessary to the protection or furtherance of a legitimate business interest.'"  Id. at 293 (quoting Bratt v. Int'l Bus. Machs. Corp., 392 Mass. 508, 513-14 (1984)).  The burden of establishing the existence and applicability of a conditional privilege rests with the defendant. Zeigler, 939 F.3d at 393; see also Jones v. Taibbi, 400 Mass. 786, 802 (1987).

11

It is plausible Porter's statements to Becker were meant to protect or further a common business interest. The Baystate Defendants and IAFF-FC were business partners working together on IAFF-FC's Wealth Management Initiative ("WMI"). They shared an interest in Hughes' competence and ethics as a board member of IAFF-FC overseeing the WMI. See Zeigler, 939 F.3d at 393 (finding that although plaintiff's employer did not employ psychiatrist, the employer and the doctor "plainly shared a common interest in evaluating Zeigler's fitness to return to work."). At this stage, it appears likely the conditional privilege is applicable to Porter's statements.

### ii.    Loss of conditional privilege

A conditional privilege may be lost if it is abused. Zeigler, 939 F.3d at 393. The plaintiff carries the burden of establishing abuse. Id. The conditional privilege is abused when "(1) there is 'unnecessary, unreasonable or excessive publication,' and the defendant recklessly published the defamatory statements; (2) the defendant published the defamatory statements with knowledge of their falsity or with reckless disregard of the truth; or (3) the defendant acted with actual malice." Lawless v. Estrella, 99 Mass. App. Ct. 16, 24 (2020) (quoting Barrows v. Wareham Fire Dist., 82 Mass. App. Ct. 623, 631 (2012).

Reckless disregard exists if the publisher had serious doubts as to the truth, or a high degree of awareness of the probable falsity, of the statements prior to publication. Scott v. Sulzer Carbomedics, Inc., 141 F. Supp. 2d 154, 178 n.81 (D. Mass. 2001), as amended (June 21, 2001); Garrison v. Louisiana, 379 U.S. 64, 74 (1964) (equating "reckless disregard" with a "high degree of awareness of . . . probable falsity"). Hughes pleaded in his Amended Complaint that Porter and Baystate made defamatory statements with reckless disregard for the truth, while the Baystate Defendants only argued that Hughes fails to allege that Becker believed Porter's

statements about Hughes receiving bribes.  [Dkt. 93 at 4].  As such, it is plausible the statements were made with reckless disregard for the truth, thereby resulting in the loss of any conditional privilege.  The Court **DENIES** the Defendants' Motion to Dismiss Hughes' defamation claim.

### B.  Interference with Advantageous Employment Relations

To prevail on a claim for intentional interference with advantageous relations, a plaintiff must show that (1) they had "a present or prospective contract or employment relationship," (2) that "the defendant knowingly induced a breaking of the relationship," and (3) that such interference "was improper in motive or means" and caused them harm.  Sindi v. El-Moslimany, 896 F.3d 1, 25 (1st Cir. 2018) (quoting Blackstone v. Cashman, 448 Mass. 255, 261 (2007)).

As an initial matter, while it is true in Massachusetts that at-will employment is terminable "without notice, for almost any reason or for no reason at all," that does not mean a third-party can endeavor to bring about the termination through improper means.  Sutherland v. Peterson's Oil Serv., Inc., 126 F.4th 728, 744-45 (1st Cir. 2025) (quoting Jackson v. Action for Bos. Cmty. Dev., Inc., 525 N.E.2d 411, 412 (Mass. 1988).  Hughes has adequately pleaded that his termination was the result of the Baystate Defendants' defamatory statements and actions.

Baystate argues that Hughes has failed to adequately allege that the Baystate Defendants acted out of the necessary "improper motives or means."  [Dkt. 93 at 11].  While it is true that financial gain or the "legitimate advancement of [one's] own economic interest" is not an improper motive,  FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 107 (1st Cir. 2009) (emphasis added) (quoting Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B., 815 N.E.2d 241, 245-46 (Mass. App. Ct. 2004)), failure to plausibly show improper motive "does not sound the death knell for [a] claim of tortious interference with advantageous relations. [Plaintiff] may still carry its pleading burden on this element of the tort by plausibly alleging

improper means." <u>Conformis, Inc. v. Aetna, Inc.</u>, 58 F.4th 517, 540 (1st Cir. 2023); <u>see also</u>

<u>United Truck Leasing Corp. v. Geltman</u>, 551 N.E.2d 20, 24 (1990).

"Improper means" in this context refers to whether the defendant "violated a statute or a

rule of common law[,] . . . used threats, misrepresented any facts, defamed anyone," or the like in

interfering with the business relationship. <u>Conformis</u>, 58 F.4th at 540 (quoting <u>Geltman</u>, 551

N.E.2d at 24). Hughes has sufficiently pleaded a claim for defamation, as discussed above, and

therefore has plausibly alleged improper means. Further, Hughes has sufficiently identified

harm, claiming that Porter's defamatory statements caused or induced Becker and IAFF-FC to

publicly deride Hughes [Dkt. 89 at ¶ 68], leading to a lack of interest by potential future

employers. <u>Id.</u> Thus, the Court **DENIES** the Baystate Defendants' Motion to Dismiss Hughes'

tortious interference claim.

## IV.    Conclusion

For the foregoing reasons, both IAFF-FC's Motion to Dismiss [Dkt. 90] and the Baystate

Defendants' Motion to Dismiss [Dkt. 92] are **DENIED**.

        **SO ORDERED.**

Dated: March 14, 2025                                    /s/ Angel Kelley
                                                        Hon. Angel Kelley
                                                        United States District Judge