## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN F. HUGHES, )<br><br>Plaintiff, )<br><br>v. )<br><br>IAFF FINANCIAL CORPORATION, )<br><br>Defendant. ) | Civil Action No. 23-CV-10361-AK |

## MEMORANDUM AND ORDER ON DEFENDANT IAFF-FC'S PARTIAL MOTION FOR SUMMARY JUDGMENT

**ANGEL KELLEY, D.J.**

On April 12, 2024, Plaintiff John F. Hughes ("Hughes") filed an Amended Complaint against Defendants IAFF Financial Corporation ("IAFF-FC"), Baystate Financial Services, LLC, and David C. Porter alleging seven causes of action. [Dkt. 89]. On March 14, 2025, this Court denied the Defendants' Motions to Dismiss. [Dkt. 106]. On July 3, 2025, subject to a Stipulation of Dismissal with Prejudice [Dkt. 128], Baystate Financial Services, LLC and David C. Porter were dismissed from the case. Following their dismissal, five counts remained against IAFF-FC: Count Three: Violation of the Dodd–Frank Act, Count Four: Intentional/Negligent Misrepresentation, Count Five: Promissory Estoppel, Count Six: Failure to Pay Timely Wages, and Count Seven: Quantum Meruit/Unjust Enrichment. [Dkt. 89 at 24-29]. On September 8, 2025, IAFF-FC moved for summary judgment on four of the five counts, declining to move for summary judgment as to Count Six: Failure to Pay Timely Wages. [Dkt. 135]. For the following reasons, IAFF-FC's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

## I.    LEGAL STANDARD

The purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." <u>Mesnick v. Gen. Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) (citing <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment may be granted when the record, viewed in the light most favorable to the non-moving party, presents no "genuine issue of material fact," and the moving party is entitled to judgment as a matter of law. <u>Paul v. Murphy</u>, 948 F.3d 42, 49 (1st Cir. 2020) (citation omitted). The Court must consider (1) whether a factual dispute exists; (2) whether the factual dispute is "genuine," such that a "reasonable fact-finder could return a verdict for the nonmoving party on the basis of the evidence"; and (3) whether a fact genuinely in dispute is material, such that it "might affect the outcome of the suit under the applicable substantive law." <u>Scott v. Sulzer Carbomedics, Inc.</u>, 141 F. Supp. 2d 154, 170 (D. Mass. 2001); <u>see also</u> <u>Napier v. F/V DEESIE, Inc.</u>, 454 F.3d 61, 66 (1st Cir. 2006).

Courts must evaluate "the record and [draw] all reasonable inferences therefrom in the light most favorable to the non-moving parties." <u>Est. of Hevia v. Portrio Corp.</u>, 602 F.3d 34, 40 (1st Cir. 2010) (citing <u>Houlton Citizens' Coal. v. Town of Houlton</u>, 175 F.3d 178, 184 (1st Cir. 1999)). A non-moving party may "defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." <u>Paul</u>, 948 F.3d at 49 (citation omitted). Submissions of evidentiary quality include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." <u>See</u> Fed. R. Civ. P. 56(c)(1)(A). More specifically, "provided that the nonmovant's deposition testimony sets forth specific facts, within his personal knowledge, that, if proven, would affect

2

the outcome of the trial, the testimony must be accepted as true for purposes of summary judgment." Velazquez-Garcia v. Horizon Lines of P.R., Inc., 473 F.3d 11, 18 (1st Cir. 2007). This extends to affidavits "containing relevant information of which he has first-hand knowledge, [which] may be self-serving, but [are] nonetheless competent to support or defeat summary judgment." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000) (internal quotation marks omitted) (quoting Cadle Co. v. Hayes, 116 F.3d 957, 961 n.5 (1st Cir.1997)).  Conversely, "[i]t is black-letter law that hearsay evidence cannot be considered on summary judgment." Davila v. Corporacion De P.R. Para La Difusion Publica, 498 F.3d 9, 17 (1st Cir. 2007) (citing Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998); Garside, 895 F.2d at 49); see also Fed. R. Civ. P. 56(e).

## II.     DISCUSSION

### A.     Count Three: Dodd–Frank Act

As the Court has stated previously, according to the Dodd–Frank Act, "[n]o employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower . . . in providing information to the Commission in accordance with this section." 15 U.S.C. § 78u-6(h)(1)(A)(i).  To qualify for Dodd–Frank's protections, Plaintiff must fall within the definition of a whistleblower.  The SEC has defined whistleblower for purposes of Dodd–Frank as the following: "You are a whistleblower . . . as of the time that . . . you provide the Commission with information *in writing* that relates to a possible violation of the federal securities laws (including any law, rule, or regulation subject to the jurisdiction of the Commission) that has occurred, is ongoing, or is about to occur." 17 C.F.R. § 240.21F-2(a)(1) (emphasis added).  As was the case at the Motion to Dismiss stage,

IAFF-FC argues for summary judgment as to this claim because Plaintiff's January 17, 2023, email was an insufficient writing to bring him within the definition of a whistleblower.

Courts that have assessed the sufficiency of a writing have generally held that "[t]o state a claim under Dodd–Frank, a plaintiff must plausibly allege that he had an objectively reasonable belief that the defendant's conduct violated one of the enumerated provisions of law." Lawrence v. Int'l Bus. Mach. Corp., No. 12-CV-8433-DLC, 2017 WL 3278917, at *10 (S.D.N.Y. Aug. 1, 2017) (citing Nielsen v. AECOM Tech. Corp., 762 F.3d 214, 222 (2d Cir. 2014)).  Importantly, neither "Dodd–Frank nor the First Circuit have further defined the scope of the information that must be provided to the Commission to be considered a whistleblower."  [Dkt. 84 at 10].

As it did in its Motion to Dismiss, IAFF-FC argues that "[p]rior to 2018, an earlier version of the SEC's regulation permitted individuals to qualify as 'whistleblowers' even if they did not strictly fit within the statutory definition set forth at 15 U.S.C. § 78u-6(a)(6) . . . . Since [the Supreme Court decided] Digital Realty, courts have strictly applied the statutory definition of a 'whistleblower' to Dodd–Frank claims." [Dkt. 139 at 3-4].  It remains true that the Court in Digital Realty made clear that "[t]he question presented [is]: Does the anti-retaliation provision of Dodd–Frank extend to an individual who has not reported a violation of the securities laws to the SEC and therefore falls outside the Act's definition of 'whistleblower'?" Digital Realty Tr., Inc. v. Somers, 583 U.S. 149, 152 (2018) (citations omitted).  With that said, it cannot be overlooked that the Court in Digital Realty relied on the principle that "'[w]hen a statute includes an explicit definition, we must follow that definition,' even if it varies from a term's ordinary meaning.  This principle resolves the question before us." Id. at 160 (quoting Burgess v. United States, 553 U.S. 124, 130 (2008)).  The Court continued, "Dodd–Frank's text and purpose leave no doubt that the term 'whistleblower' in § 78u–6(h) carries the meaning set forth in the

section's definitional provision." <u>Id.</u> at 163.  In light of the Supreme Court's finding that the definition of a whistleblower is clear based on the statutory text, this Court must keep in mind that the definition explicitly states that the information must be provided to the SEC in writing.

Since <u>Digital Realty</u>, courts have affirmed that reports to the SEC must be in writing. <u>Brooks v. Agate Res., Inc.</u>, 836 F. App'x 471, 475 (9th Cir. 2020) ("The Dodd–Frank claim fails because plaintiff did not allege that he filed a securities fraud complaint with the SEC before his termination."); <u>Neely v. Boeing Co.</u>, 823 F. App'x 494, 496 (9th Cir. 2020) ("[H]e did not file a securities complaint with the Securities and Exchange Commission prior to his termination."). Additionally, courts have considered how specific these writings to the SEC must be.  For example, in <u>Pickolz v. TransparentBusiness, Inc.</u>, the court held that "[w]ithout any allegations regarding what securities laws Plaintiff believes Defendants violated and what information Plaintiff provided to the SEC, the Court cannot determine whether Plaintiff 'possess[ed] a reasonable belief that the information' he provided to the SEC 'relates to a possible securities law violation.' 17 C.F.R. § 240.21F-2(b)(1)(i)–(ii) . . . . Plaintiff must provide the Court with some allegations regarding *which* federal securities laws and regulations he reasonably believed Defendants violated and what conduct he informed the SEC about." No. 22-CV-2504-ES-JBC 2024 WL 489543, at *6 (D.N.J. Feb. 8, 2024).  <u>Pickolz</u> followed the reasoning in <u>Cellucci v. O'Leary</u>, in which the court found that "the amended complaint contain[ed] no allegation as to the contents of [Plaintiff]'s complaint—accordingly, the Court has no way to assess whether he was complaining of conduct that is even arguably within the scope of the Dodd–Frank whistleblower provision and no way to assess whether [Plaintiff] could have had a reasonable belief that the reported conduct was unlawful. Not only are the relevant allegations wholly untethered from the elements of any particular violation, the amended complaint does not even

identify a specific provision or section that may have been violated." No. 19-CV-2752-VEC, 2020 WL 977986, at *10 (S.D.N.Y. Feb. 28, 2020); <u>see also</u> <u>Nielsen</u>, 762 F.3d at 221 n.6 ("[T]he statutory language suggests that, to be reasonable, the purported whistleblower's belief cannot exist wholly untethered from these specific provisions.").

In ruling on the Motion to Dismiss, the Court distinguished <u>Pickolz</u> and <u>Cellucci</u> from the instant matter, as neither operative complaint in those cases actually included the writing on which the purported whistleblower's protection relied. The Court found that this case could survive the Motion to Dismiss, as "according to the Amended Complaint, there was a pre-existing relationship, the email was specifically in reference to the application submitted on behalf of IAFF-FC, and there had clearly been prior phone calls. Thus, *at this stage of the proceedings*, accepting all allegations as true, the writing plausibly highlights sufficient conduct that 'approximate[s] specific elements' of IAFF-FC fraud—providing false or misleading information to the SEC—which would certainly be a violation of securities law." [Dkt. 106 at 8 (emphasis added)].

Nonetheless, even in finding the claim could survive, the Court stated, "[t]here is no question that this is a close call, even considering the lower pleading standard at the motion to dismiss stage." [<u>Id.</u> at 4]. The Court is no longer required to adhere to that lower pleading standard. At the time of the Motion to Dismiss, the Court had the written communication and accepted as true that Plaintiff sent his written correspondence following a call regarding the application sent to the SEC, and this phone call included sufficient discussion to tether the written correspondence to specific securities violations. At this stage, proof that the phone calls occurred—which remains in dispute— is insufficient. Proof of the content of the calls was necessary to reinforce the deficient written communication.

Now with the benefit of the record, there is no genuine dispute of material fact that the claimed phone calls, followed by the barebones written communication, were insufficient to fulfill the written communication requirement.  There is no evidence to determine whether the conduct complained of tied to specific securities violations that fell within the scope of the Dodd–Frank whistleblower provision, that there were specific laws Plaintiff believed were violated, or that Plaintiff had a reasonable belief that the reported conduct was unlawful, beyond his "ethical" concerns.  Instead, all that exists is Plaintiff's claims that the phone conversations were sufficiently specific.

Worth noting, Plaintiff obfuscated access to evidence that would have at least proved that the phone calls occurred.  IAFF-FC requested Plaintiff's telephone records on October 18, 2023, within a year of the purported conversation(s).  Plaintiff never responded.  In opposition to a Motion to Compel regarding the telephone records, Plaintiff claimed that when he tried to retrieve the records, he was "told by Verizon such records did not exist because he had a pre-paid phone plan." [Dkts. 149 at 9; 119 at 2-3].  After requiring the Plaintiff to provide additional information as to his efforts to get the records, the Magistrate Judge noted that "Plaintiff has agreed to cooperate with IAFF's efforts to obtain these records from Plaintiff's telephone service provider via subpoena pursuant to Federal Rule 45." [Dkt. 125 at 2].

Nonetheless, after IAFF-FC subpoenaed Verizon directly for the records, Plaintiff wrote to Verizon objecting to the request and claimed to be filing a Motion to Quash, which was never filed, and no other objections were made.  Nonetheless, IAFF-FC was informed that, had the records been requested within 365 days, they would have been available.  Similar to the court in Cellucci, the Court finds Plaintiff's reticence to provide these records concerning enough to question his testimony.  In light of this concerning behavior, as well as the other inconsistencies

in Plaintiff's testimony [Dkt. 149 at 7-9], the evidence about these phone calls is insufficient to buttress the deficient writing to the SEC.

Finally, the Court notes that the entire sum of Plaintiff's deposition testimony as to the contents of the phone call, which he did not record nor did he take any contemporaneous notes, is as follows:

Question:  And what did you and Mr. Hogan speak about?

Hughes:  I talked to him about potentially there were things going on in the IAFF-FC advisors that weren't ethically and moral and potentially illegal developments occurring in the organization. Potentially, at this point.

. . .

Question:  That turned on these issues you were having with -- specifically what that -- . . . related to the IAFF-FC?

Hughes:  That would be the -- the letter that Attorney McLeod was putting together . . . which was filled with all affirmative misrepresentations of what the IAFF-FC could actually -- advisors could actually do and what they could be able to do. And I let him know that these were my licenses. My licenses were involved with this. I'm very, very uncomfortable.  I'm actually very angry that this is actually occurring. And I felt like -- I didn't feel like -- I know I was in a position where -- where the financial core -- Kurt Becker, Ed Kelly -- was willing to go forward with this letter, knowing my concerns, knowing that I sent the letter out on December 2nd to Kurt Becker, who he felt that -- he didn't share with anyone except to David Porter, my concerns.  And these concerns were never brought up

> until December 22nd during a conversation I had with Bernie Wynn and --
> and Kurt. I also mentioned to Kevin there's also pay-to-play things
> occurring, and -- and I didn't get specific with him, Bill -- pay-to-play
> things occurring in this company. And I'm very uncomfortable losing my
> license -- potentially losing my license over this situation.

[Dkt. 143-3 at 8-9].  Even accepting these statements as true and integrating them with the written correspondence, Plaintiff failed to identify specific securities violations or align IAFF-FC's conduct with any specific elements of an offense.  As Plaintiff stated, he "didn't get specific with him," failing to provide any conduct, beyond conclusory recitations, that could possibly be considered a securities violation.

Without more than Plaintiff has been able to provide—and seemingly prevented anyone else from discovering—and even when viewing the record in the light most favorable to the Plaintiff, no reasonable factfinder could find that Plaintiff has provided sufficient evidence of an adequate writing, as required by the Act.  Thus, Plaintiff is not a whistleblower, as contemplated by the Dodd–Frank Act, and Defendant's Motion for Summary Judgement as to Count Three is **GRANTED**.

### B.    Count Four: Intentional/Negligent Misrepresentation

As an initial matter, this Court disagrees that Plaintiff's claim lacks sufficient particularity to satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b).  It is unnecessary to comment on the distinction between intentional and negligent misrepresentation, as the standard is satisfied.  Sufficient facts exist such that Plaintiff has identified the who, what, where, and when of the statements.

"[A] claim for intentional misrepresentation requires proof of four elements: (1) the defendant made a false misrepresentation of material fact, (2) the defendant acted with knowledge of its falsity, (3) the defendant acted with the purpose of inducing the plaintiff to act on the misrepresentation and (4) the plaintiff relied on the misrepresentation to her detriment." Int'l Floor Crafts, Inc. v. Adams, 477 F. Supp. 2d 336, 341 (D. Mass. 2007). Further, "[s]tatements of a promissory nature (and predictions regarding future events) are not 'false when made,' unless it can be shown that the maker never intended to carry out the promise (that is, misrepresented his intent at the time the promise was made), or knew that the predictions were false or that the promise was impossible to perform." Robert E. Ricciardelli Carpet Serv., Inc. v. Home Depot U.S.A., Inc., 679 F. Supp. 2d 192, 208 (D. Mass. 2010).

In drawing a line between intentional and negligent misrepresentation under Massachusetts law, the First Circuit has held that the speaker has an intent to deceive, as required for intentional misrepresentation, if the speaker: "(a) knows or believes that the matter is not as he represents it to be, (b) does not have the confidence in the accuracy of his representation that he states or implies, or (c) knows that he does not have the basis for his representation that he states or implies." Cummings v. HPG Int'l, Inc., 244 F.3d 16, 23 (1st Cir. 2001) (quoting Restatement (Second) of Torts § 526). Insufficient facts exist in the record such that a reasonable jury could find Becker and Colbert had the intent to deceive by having actual knowledge of the statements' falsity, lacking confidence in the accuracy of their representations, or knowing that there was no basis for their representations. Further, although Plaintiff claims that "[t]he fraudulent nature of the statements is demonstrated by the fact that the FC never changed its [ ] practices" [Dkt. 144 at 14], "[t]he intention of the promisor not to perform an enforceable or unenforceable agreement cannot be established solely by proof of its

nonperformance." <u>Zhang v. Mass. Inst. of Tech.</u>, 46 Mass. App. Ct. 597, 606 (1999). At base, there are not any facts to establish that Becker and Colbert never intended to carry out the promises or knew that the promises were impossible to perform.

While "negligence in discovering the falsity before making the representation is not sufficient for an action in tort for deceit, [] it is enough for an action in negligence." <u>Cummings</u>, 244 F.3d at 23 (quoting 37 J. Nolan & L. Sartorio, Massachusetts Practice § 143 at 240-41 (2d ed. 1989)). A claim for negligent misrepresentation requires Plaintiff to prove that the speaker(s) provided false information "with [a] failure to exercise reasonable care or competence in obtaining or communicating the information." <u>Id.</u> (quoting <u>Nota Constr. Corp. v. Keyes Assoc.</u>, 694 N.E.2d 401, 405 (1998)); <u>Int'l Floor Crafts, Inc.</u>, 477 F. Supp. 2d at 341 ("A claim for negligent misrepresentation requires only proof that the defendant failed to exercise reasonable care in communicating the false information."); <u>Kitner v. CTW Transp., Inc.</u>, 53 Mass. App. Ct. 741, 749 (2002) ("Establishing liability for [negligent] misrepresentation does not require a showing that the defendant even knew that the statements made were false or that the defendant actually intended to deceive the plaintiff."). "For a negligent misrepresentation claim, courts ask simply whether the speaker was negligent in failing to discover the falsity of his or her statements." <u>Cummings</u>, 244 F.3d at 25.

Despite the lower standard, Plaintiff has still failed to provide any evidence that Colbert and Becker could have known that the representations made were false, no matter the exercise of diligence. Not only were Becker and Colbert limited in their abilities to bind IAFF-FC, but it would have been impossible for them to know the difficulties, whether attributed to Plaintiff or not, in launching a subsidiary of IAFF-FC as an Investment Advisor and Broker-Dealer, which were necessary as IAFF-FC considered new offerings for its members. The future performance

of Plaintiff, as well as legal and financial consultants, cannot change what Becker and Colbert knew at the time the statements were made—that Plaintiff would create the infrastructure necessary to provide new offerings to the membership.

Thus, in light of the above, Defendant's Motion for Summary Judgment as to Plaintiff's Fourth Cause of Action for Intentional and Negligent Misrepresentation is **GRANTED**.

### C.    Count Five: Promissory Estoppel

To make a claim for promissory estoppel, "[a] plaintiff must allege and prove '(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission.'" Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1, 14 (1st Cir. 2014) (quoting Sullivan v. Chief Justice for Admin. & Mgmt. of Trial Court, 448 Mass. 15, 27-28 (2006).  Genuine issues of material fact remain as to all three elements, namely: (1) that the promises made in advance of Plaintiff's hiring were clear and definite enough to serve as the basis of a contract, (2) that these promises induced Plaintiff to join IAFF-FC, (3) that IAFF-FC failed to fulfill the stated promises, and (4) that Plaintiff did, in fact, suffer damages as a result of his reliance on IAFF-FC's statements.

Thus, Defendant's Motion for Summary Judgment as to Plaintiff's Fifth Cause of Action for Promissory Estoppel is **DENIED**.

### D.    Count Seven: Quantum Meruit/Unjust Enrichment

"A claim in quantum meruit is closely related to a claim for unjust enrichment: '[t]he underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party.'" Sugarman & Sugarman, P.C. v. Shapiro, 102 Mass. App. Ct. 816, 820 n.7 (2023) (quoting Salamon v. Terra, 394 Mass. 857,

859 (1985)).  "Unjust enrichment is defined as 'retention of money or property of another against the fundamental principles of justice or equity and good conscience.' An equitable remedy for unjust enrichment is not available to a party with an adequate remedy at law." Santagate v. Tower, 64 Mass. App. Ct. 324, 329 (2005) (quoting Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co., 534 F. Supp. 340, 347 (D. Mass. 1982)); Scarpaci v. Lowe's Home Ctr., LLC, 212 F. Supp. 3d 246, 253 (D. Mass. 2016) ("An equitable claim for unjust enrichment is not available when the claiming party has an adequate remedy at law.").

Courts have allowed unjust enrichment to be pled as an alternative remedy when the remedy at law is inadequate.  For example, a claim for unjust enrichment may survive when it is in dispute if a contract defines the rights at issue or is otherwise silent on the matter. See Lass v. Bank of Am., N.A., 695 F.3d 129, 140-41 (1st Cir. 2012) ("The Bank argues that this flexibility in pleading does not apply where, as here, the parties agree that there is a valid contract between them. The mortgage, however, does not explicitly address either commissions or, more generally, the Bank's entitlement to profit from its forced placement of insurance.").  Unjust enrichment claims commonly survive when the scope of the existing contract and the retention of certain benefits is disputed.

As an initial matter, it remains in dispute if IAFF-FC has been unjustly enriched by retaining money that is owed to Plaintiff, including his final paycheck and a portion of his 2022 salary.  Additionally, it remains unclear that an adequate remedy at law exists to rectify this dispute.  While Plaintiff has included a claim for a failure to pay timely wages in violation of D.C. § 32-1303, this may not address the wages Plaintiff claims IAFF-FC has withheld. Additionally, despite failing to move for dismissal or summary judgment, IAFF-FC intends to argue that Plaintiff is ineligible for relief under the D.C. Code.

Thus, there remains a genuine dispute of material fact that IAFF-FC has been unjustly enriched based on the retention of certain benefits and that Plaintiff has an available adequate remedy at law.  Defendant's Motion for Summary Judgment as to Plaintiff's Seventh Cause of Action for Unjust Enrichment/Quantum Meruit is **DENIED**.

## III.    CONCLUSION

For the foregoing reasons, IAFF-FC's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.  Count Three: Violation of the Dodd–Frank Act and Count Four: Intentional/Negligent Misrepresentation are **DISMISSED**.  The remaining claims are as follows: Count Five: Promissory Estoppel, Count Six: Failure to Pay Timely Wages, and Count Seven: Quantum Meruit/Unjust Enrichment.

**SO ORDERED.**

Dated: February 3, 2026                                        /s/ Angel Kelley
                                                                       Hon. Angel Kelley
                                                                       United States District Judge